**DIVERSIFIED HUMAN RESOURCES GROUP, INC., Appellant,**

v.

**Lauren LEVINSON–POLAKOFF, Appellee.**

No. 05–87–00332–CV.

Court of Appeals of Texas, Dallas.

May 16, 1988.

Rehearing Denied June 20, 1988.

Michael A. Barragan, Dallas, for appellant.

Bruce A. Budner, Dallas, for appellee.

Before DEVANY, LAGARDE and THOMAS, JJ.

THOMAS, Justice.

This is an appeal from the granting of summary judgment in favor of appellee, Lauren Levinson–Polakoff. Appellant, Diversified Human Resources Group, Inc., (Diversified), complains in three points of error that the trial court erred in granting summary judgment for Levinson–Polakoff because: 1) there were issues of material fact precluding summary judgment; 2) the noncompetition agreement within the employment contract was not unreasonable and overbroad on its face; and 3) there was consideration to support the noncompetition agreement. We disagree; consequently, we affirm.

In this covenant not to compete case, Diversified filed its first lawsuit against Levinson–Polakoff for a temporary injunction restraining her from working for another recruiting agency. When the application was denied, Diversified instituted this suit to enforce the liquidated damages provision for Levinson–Polakoff's alleged breach of her employment contract with Diversified. On Levinson–Polakoff's motion for summary judgment, the trial court held that there were no genuine issues of material fact and that the noncompetition agreement of the employment contract was unreasonable and overbroad.

When Levinson–Polakoff began working for Diversified in September 1985, she signed an employment agreement that contained a noncompetition agreement and a liquidated damages provision. Because Levinson–Polakoff had no prior experience in the employment agency business, Diversified trained her. She worked on a commission basis exclusively in the data processing department of the employment agency's Dallas office, recruiting prospective employees for Diversified's data processing clients. Before her termination by Diversified in May, 1986, Levinson–Polakoff had received various employee awards and honors during her eight months of employment; that being so, Hank Stringer, a group manager at Diversified, stated as his reason for firing Levinson–Polakoff

that she was "much too aggressive ... in pursuing her own placements and fees to the exclusion of the [other job placement counselors.]"

Levinson–Polakoff soon took a position with The Danbrook Group, recruiting and placing employees for insurance underwriting positions with insurance companies. Danbrook is located only a few miles from a Diversified office in Dallas. Diversified contends that Levinson–Polakoff's employment with Danbrook was within the time and area limitations of her noncompetition agreement with Diversified. The employment agreement reads in relevant part as follows:

> 8. *Non–Competition Agreement....* Employee covenants and agrees that during the term of his employment, and for a period of *six (6) months* immediately following the termination of such employment, for whatever reason, Employee will not, within a *fifty (50) mile radius* of *any* city with a currently operating DHRG profit center, engage in the recruitment, executive search, placement or employment agency business, either as an individual for his own account, or as a partner or joint venturer, or as a consultant, or as an employee or agent for any person, or as an officer, director, shareholder, or employee of a corporation, or otherwise.
>
> .    .    .    .    .
>
> 11. *Breach of Agreement....* (b) By Employee: If Employee should fail to comply with the provisions of paragraphs 8, 9, and 10 of this Agreement DHRG shall be entitled to the payment by employee of *$5,000,* [amount filled in and initiated by parties] as liquidated damages to DHRG resulting from such breach....

(emphasis added). Diversified argues that Levinson–Polakoff has been in direct competition with Diversified while working for Danbrook even though she claims her job now is one of a recruiter of insurance underwriting professionals and not of data processing personnel.

■ Our review of motions for summary judgment is governed by the standards es-

tablished by the Texas Supreme Court, which are:

> 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
> 2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
> 3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985). The function of the summary judgment is not to deprive a litigant of his right to trial by jury but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952). Its purpose is to eliminate the need for formal trials where only questions of law exist. *Schroeder v. Texas & Pac. Ry. Co.,* 243 S.W.2d 261, 263 (Tex.Civ. App.—Dallas 1951, no writ).

■ We initially address Diversified's second point of error in which it complains that the trial court erred in ruling the noncompetition clause to be unreasonable and overbroad. A noncompetition agreement is a restraint of trade and will only be enforced as written if it does not impose upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer. *Weatherford Oil Tool Company v. Campbell,* 161 Tex. 310, 340 S.W.2d 950, 951 (1960). Whether a restrictive covenant is reasonable and susceptible of enforcement without reformation is a question of law for the court. *Henshaw v. Kroenecke,* 656 S.W.2d 416, 418 (Tex.1983). To support an award of monetary damages, as Diversified acknowledges, the covenant not to compete must be capable of being enforced without the necessity of reformation. *Weatherford,* 340 S.W.2d at 953.

Our inquiry then is whether the summary judgment proof establishes that the noncompetition agreement signed by Levinson–Polakoff is unreasonable as a matter

of law. The Texas Supreme Court recently delineated four criteria to be used in determining the reasonableness of a covenant not to compete: (1) the covenant must be necessary for the protection of the promisee, this is to say, the promisee must have a legitimate interest in protecting business goodwill or trade secrets; (2) the limitations as to time, territory and activity in the covenant must be reasonable; (3) the covenant must not be injurious to the public; and (4) the promisee must give consideration for the covenant. *Hill v. Mobile Auto Trim, Inc.,* 725 S.W.2d 168, 170–71 (Tex.1987). Utilizing these four factors, we turn to an examination of the agreement in this case.

We recognize that Diversified may have significant business interests it wants to protect; nevertheless, a covenant to protect such interests must not be oppressive in time, territory, or activity. *Frankiewicz v. National Comp Associates,* 633 S.W.2d 505, 507 (Tex.1982). This noncompetition clause would restrain Levinson–Polakoff from "engag[ing] in the recruitment, executive search, placement or employment agency business ... as an employee ... or otherwise" within a 50 mile radius of any city in which Diversified operates. This covenant does not just forbid Levinson–Polakoff from working in the Dallas area and recruiting data processing related personnel for competing agencies; rather, it attempts to restrain her from placing *any* kind of personnel within 50 miles of *any* city where Diversified operates a "profit center." The provision is oppressive on its face; it is injurious to the public as well because it prevents fair competition by going beyond its necessary purpose to protect Diversified. *See, e.g., Matlock v. Data Processing Security, Inc.,* 618 S.W.2d 327, 329 (Tex.1981). Thus, we hold that this covenant is unreasonable both in its scope of activity and geographic area.

### Scope of Activity

■ First, the covenant is overbroad in scope because its language effectively restricts Levinson–Polakoff as an "employee ... or otherwise" from the "employment agency business." Diversified admits that there are some 250 placement, executive search, and recruitment agencies in the Dallas area, and at oral argument it was revealed that these numerous agencies place individuals in almost every facet of business life from support staff to a variety of professionals. Diversified presented affidavits from two managers, Hank Stringer and Cary Tobolka. Stringer claims that he did not train Levinson–Polakoff to work exclusively in the data processing placement business, although he admits her job with Diversified was to recruit data processors. Both Stringer and Tobolka suggest that she would not be able to recruit underwriting professionals for Danbrook if it were not for her training at Diversified, and because Diversified also recruits insurance underwriting professionals, Levinson–Polakoff is necessarily in competition with them. Stringer urges that since Levinson–Polakoff recruited data processing employees for insurance companies, that could be referred to as the recruitment of "insurance underwriting professionals." Our inquiry, however, is not limited to whether the placement of insurance underwriters is related to the placement of data processors. Further, the issue is not whether Levinson–Polakoff exceeded the bounds of a covenant that only restricted her from placing data processors and related positions; instead, we are faced with determining whether a covenant which restricts the placement of "any" type of personnel is unreasonable.

We recognize that Diversified may have had a legitimate interest in restricting Levinson–Polakoff from recruiting data processors in the Dallas area for six months. However, we are not persuaded that a covenant that restrains her from placing personnel in any other non-related field is reasonable. Levinson–Polakoff may have acquired useful skills through her employment with Diversified, but it appears from the record that her true ability to compete with Diversified derives from her data processing related contacts.

We hold that the noncompetition agreement prohibits a larger scope of activity than is reasonably necessary to protect Diversified and is unenforceable without ref-

**12**

ormation. *See Hill,* 725 S.W.2d at 170; *Weatherford,* 340 S.W.2d at 951. *See also Matlock,* 618 S.W.2d at 329 (covenant overbroad where it restricted competing anywhere and with anybody); *Electronic Data Systems Corp. v. Powell,* 524 S.W.2d 393, 398–99 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.) (covenant reformed from a restriction against working in the electronic data processing business altogether to only a restriction on working in the same aspect of the electronic data processing business).

*Geographical Area of The Agreement*

■ The agreement is also unreasonable and overbroad in area. What constitutes a reasonable area is generally considered to be the territory in which the employee worked while in the employment of his employer. *Justin Belt Co. v. Yost,* 502 S.W.2d 681, 685 (Tex.1973); *Martin v. Linen Systems For Hospitals, Inc.,* 671 S.W.2d 706, 709 (Tex.App.1984). Stringer's affidavit stated that Levinson–Polakoff worked under his direction at Diversified's Dallas office throughout her employment and that her employment agency functions were performed "generally throughout the Dallas/Fort Worth metroplex area and surrounding cities." Tobolka's affidavit additionally showed that Diversified's Dallas offices operate throughout the metroplex area, including "Dallas, Fort Worth, Richardson, Plano, McKinney, Hurst, Bedford, Euless, Arlington, Denton, Duncanville and immediately surrounding areas."

The evidence does not show that Levinson–Polakoff's job activities extended beyond the Dallas Metroplex to other cities, thus raising a fact question as to the reasonableness of the "any city" restriction; in fact, Diversified's own summary judgment proof established the limited area of Levinson–Polakoff's employment. Further, Diversified operates throughout Texas; its two largest operations are in Dallas and Houston. Thus, restraining Levinson–Polakoff within 50 miles of these two cities effectively precludes her employment within the State.

We hold that the covenant which sought to restrict Levinson–Polakoff from working within fifty miles of any city in which Diversified operated a profit center is unreasonable and overbroad in that it encompasses an area greater than the one in which Levinson–Polakoff worked for Diversified. Therefore, the covenant is unenforceable as is. *See Martin,* 671 S.W.2d at 709–10. We overrule point of error two.

Having held that the covenant not to compete is not capable of being enforced without significant reformation, we conclude that Diversified's action for damages must fail. *Weatherford,* 340 S.W.2d at 953. Consequently, we affirm the trial court's summary judgment that Diversified take nothing against Levinson–Polakoff.