**ZEP MANUFACTURING COMPANY, Appellant,**

v.

**Gregory B. HARTHCOCK & Panther Industries, Inc., Appellees.**

No. 05–90–01554–CV.

Court of Appeals of Texas, Dallas.

Jan. 16, 1992.

Tori Smith Levine, Mark J. Zimmermann, Dallas, for appellant.

Celeste L. Frank, George C. Dunlap, Dallas, for appellees.

Before STEWART, OVARD, and CHAPMAN, JJ.

## OPINION

STEWART, Justice.

Zep Manufacturing Company appeals from a summary judgment in favor of Gregory B. Harthcock and Panther Industries, Inc.[1] on Zep's claims against Harthcock for breach of an employment contract and against Panther for tortious interference with contract. In seventeen points of error, Zep complains that the trial court erred in granting summary judgment. We affirm in part, reverse and render in part, and reverse and remand in part.

### FACTUAL BACKGROUND

Zep and Panther compete in the manufacture and sale of industrial chemicals. Each company develops its own chemical formulas, which distinguish it in the chemical industry. These formulas generally are not patented because patents are expensive and require the disclosure of the company's formula. Zep seeks to protect its chemical formulas and other proprietary information by having its employees sign an employment agreement.

---

**1.** Harthcock and Panther will be referred to collectively as "appellees" unless it is necessary to identify them individually.

In April 1987, Zep hired Harthcock as a chemist. His duties included quality control of plant production and analyses of competitive products. Harthcock signed an employment agreement which contained, among other things, the noncompete and nondisclosure covenants at issue here. Zep trained Harthcock as an industrial chemist[2] and gave him access to Zep's chemical formulas.

In May 1989, Daniel Stultz, chairman of the executive committee at Panther, contacted Harthcock concerning an employment opportunity at Panther. When Harthcock told Stultz about his employment agreement with Zep, Stultz said that Panther would handle any legal matters that arose from Harthcock's employment with Panther. On May 26, 1989, Harthcock resigned from Zep. He subsequently began to work as a chemist for Panther.

On August 15 and October 18, 1989, Zep sent Harthcock and Panther notice that it believed that Harthcock's employment violated the employment agreement and that it intended to enforce the employment agreement. Harthcock continued to work for Panther.

In December 1989, Zep filed this lawsuit against appellees, alleging Harthcock's breach of the noncompete, nondisclosure, and nonsolicitation covenants[3] contained in the employment agreement; Panther's tortious interference with contractual relations; and unfair competition. On December 13, 1989, the trial court granted Zep's request for a temporary restraining order. On December 22, 1989, the trial court entered an agreed temporary injunction restraining Harthcock from, among other things, knowingly or intentionally disclosing any of Zep's trade secrets or confidential information.

On July 27, 1990, appellees filed their motion for summary judgment, alleging the following grounds:

1. The noncompete covenant is unenforceable as a matter of law as not being

ancillary to an otherwise enforceable agreement.
2. The noncompete covenant is an unreasonable restraint on trade and unenforceable on the grounds of public policy.
3. The nondisclosure covenant is unenforceable as a matter of law because it is part of and operates in conjunction with an otherwise unenforceable noncompete covenant and/or contains an unreasonable period of time and has no geographical limits to its enforceability.
4. Zep cannot base its action for damages for tortious interference against Panther on Harthcock's unenforceable noncompete covenant and nondisclosure agreement.

On November 2, 1990, the trial court rendered judgment granting appellees' motion for summary judgment on all of Zep's claims.

## STANDARD OF REVIEW

In reviewing a summary judgment record, this Court applies the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). For the defendant as movant to prevail on a summary judgment, it must either (1) disprove at least one element of the plaintiff's theory of recovery or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Traylor v. Unitedbank Orange,* 675 S.W.2d 802, 804 (Tex. App.—Beaumont 1984, writ ref'd n.r.e.). A

---

**2.** When Zep hired Harthcock, he had neither a college degree in chemistry nor experience as a chemist.

**3.** This appeal concerns only the noncompete and nondisclosure covenants.

matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). The question on appeal is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). When, as here, the trial court's judgment does not specify the grounds relied upon for its ruling, summary judgment will be affirmed if any of the grounds advanced in support of summary judgment is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

### ENFORCEABILITY OF THE NONCOMPETE COVENANT

Panther alleged as grounds for summary judgment that the noncompete covenant was unenforceable because it is not ancillary to an otherwise enforceable agreement and because it is an unreasonable restraint on trade and, thus, unenforceable on grounds of public policy.

■ Courts generally disfavor noncompete covenants because of the public policy against restraints of trade and the hardships resulting from interference with a person's means of livelihood. *Martin v. Linen Sys. for Hosps., Inc.*, 671 S.W.2d 706, 709 (Tex.App.—Houston [1st Dist.] 1984, no writ). Section 15.50 of the Texas Business and Commerce Code provides that a noncompete covenant is enforceable if it:

(1) is ancillary to an otherwise enforceable agreement but, if the covenant not to compete is executed on a date other than the date on which the underlying agreement is executed, such covenant must be supported by independent valuable consideration; and

(2) contains reasonable limitations as to time, geographical area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX.BUS. & COM.CODE ANN. § 15.50(1)–(2) (Vernon Supp.1992).

### A. Ancillary Requirement

In the first three points, Zep contends generally that the trial court erred in granting appellees' motion for summary judgment because the noncompete and nondisclosure covenants are ancillary to a valid and enforceable employment agreement. Zep contends that the employment agreement is a satisfaction, not an at-will, contract and is therefore "an otherwise enforceable agreement." Thus, it asserts, the noncompete covenant is ancillary to an enforceable contract. Appellees, on the other hand, argue that the employment agreement is ancillary to an unenforceable at-will employment contract. They specifically argue that the employment agreement is at-will because it does not contain a definite term of employment and because the president of Zep can terminate Harthcock in his "'sole discretion' at any time."

Paragraph 6 of the employment agreement provides for termination by Zep as follows:

If the President of Zep, *in his sole discretion, determines that Employee's performance of duties hereunder is unsatisfactory,* Employee's employment hereunder may be terminated by written notice from the President of Zep or his designee, and Employee shall receive Employee's salary for the two (2) months (including the month in which notice is given as one full month) following the giving of such notice.

(Emphasis added.) Paragraph 6 further provides for voluntary termination as follows: "[Harthcock] may terminate [his] employment hereunder upon thirty (30) days prior written notice to Zep, and in such event, [Harthcock] shall only be entitled to [his] salary through the effective date of termination."

■ Appellees argue that Zep cannot contend on appeal that the employment agreement is a satisfaction contract because it failed to raise this argument in its response to appellees' motion for summary judgment. *See* TEX.R.CIV.P. 166a(c) (issues

not expressly presented to the trial court by written motion, answer, or other response not considered on appeal as grounds for reversal). However, appellees, as summary judgment movants, had the burden to establish the unenforceability of the employment agreement as a matter of law. Thus, Zep was required to raise a fact question on this issue only if appellees first established as a matter of law that the employment agreement is at-will.

 It is undisputed that the employment agreement does not provide a definite term of employment.[4] This alone, however, does not make the employment agreement an unenforceable employment-at-will contract. *See Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 336 (Tex.App.—Dallas 1986, no writ). An employment contract is at-will unless the parties limit the employer's right to terminate the employee at will. *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.). An employment-at-will contract is not an otherwise enforceable agreement. *Travel Masters, Inc. v. Star Tours, Inc.*, 35 Tex.Sup.Ct.J. 254, 255, 1991 WL 269039 (Dec. 18, 1991); *see Martin v. Credit Protection Ass'n*, 793 S.W.2d 667, 669–70 (Tex.1990).

 The employment agreement allows Zep to terminate Harthcock's employment if, in the Zep president's "sole discretion," Harthcock's performance of his duties is "unsatisfactory." The employment agreement contains no other grounds for termination by Zep. Appellees assert that the above provision allows the president of Zep to terminate Harthcock at will because the termination is in the president's "sole discretion." We read the above provision to mean that Zep would continue to employ Harthcock as long as Harthcock satisfactorily performed his duties, although the president of Zep has the discretion to determine whether Harthcock's performance is satisfactory.

 In Texas, a contract by which one agrees to employ another as long as

the services are satisfactory, or which is otherwise expressed to be conditional on the satisfactory character of the services rendered, gives the employer the right to terminate the contract and to discharge the employee whenever the employer, acting in good faith, is actually and honestly dissatisfied with the work. *Lone Star Gas Co. v. Pippin*, 620 S.W.2d 922, 924 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); *Hardison v. A.H. Belo Corp.*, 247 S.W.2d 167, 168 (Tex.Civ.App.—Dallas 1952, no writ). There must be a bona fide dissatisfaction or cause for discharge, and dissatisfaction must be founded on acts such as would induce action on the part of a reasonable person. *Porter v. United Motels, Inc.*, 315 S.W.2d 340, 344 (Tex.Civ.App.—Waco 1958, no writ). The employer may not act arbitrarily or without reason in the matter. *Id.* If the employer feigns dissatisfaction and dismisses the employee, the discharge is wrongful. *Hardison*, 247 S.W.2d at 168. Although an employment-at-will contract allows severance of the employment relationship at any time without cause, when an employment agreement is a satisfaction contract, there must be a bona fide dissatisfaction or cause for discharge. *Dallas Hotel Co. v. Lackey*, 203 S.W.2d 557, 563 (Tex.Civ.App.—Dallas 1947, writ ref'd n.r.e.) (op. on reh'g).

The employment agreement here contains terms that limit Zep's right to terminate Harthcock's employment. Although the determination of the quality of Harthcock's performance is within the Zep president's "sole discretion," Texas law implies that the determination to terminate Harthcock will be made in good faith. The limitation on Zep's right to terminate Harthcock if he satisfactorily performed his duties changed the normal employment-at-will relationship. Thus, we conclude that the trial court erred if it granted appellees' motion for summary judgment on the ground that the employment contract was unenforceable. We sustain Zep's first three points.

4. The employment agreement provides that Harthcock's employment "shall continue until terminated [as provided] either by Zep or by [Harthcock]."

### B. Reasonable–Restraint Requirement

In points twelve and thirteen, Zep contends that the trial court erred in granting appellees' motion for summary judgment because the noncompete covenant is not an unreasonable restraint and because the summary judgment evidence raises a genuine issue of material fact concerning whether the noncompete covenant is an unreasonable restraint of trade and unenforceable on grounds of public policy. The noncompete covenant [5] provides as follows:

> Employee hereby expressly covenants and agrees that during the term of Employee's employment hereunder and for a period of *twenty-four (24) months* following the termination of Employee's employment hereunder, whether such termination is voluntary or involuntary, *Employee will not perform services similar to those Employee performed for Zep hereunder* for any person, persons, partnership, or corporation engaged in the offer or sale of products of the same or similar kind as those offered or sold by Zep at any time during the twelve (12) month period immediately preceding the termination of Employee's employment hereunder.

(Emphasis added.)

▆▆▆▆ A noncompete covenant is a restraint of trade and unenforceable unless it is reasonable. *Travel Masters, Inc.*, 35 Tex.Sup.Ct.J. at 255; *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 662 (Tex.1990). To be enforceable, a noncompete covenant must contain reasonable limitations as to time, geographical area, and scope of activity to be restrained. The covenant cannot impose a greater restraint than necessary to protect the goodwill or other business interest of the promisee. TEX.BUS. & COM.CODE ANN. § 15.50(2) (Vernon Supp.1991). The issue of whether a covenant is a reasonable restraint of trade is a question of law. *Travel Masters, Inc.*, 35 Tex.Sup.Ct.J. at 255;

*Juliette Fowler Homes, Inc.*, 793 S.W.2d at 662. A covenant is unreasonable if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted. *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168, 170 (Tex.1987).

▆▆▆▆ Appellees assert that the noncompete covenant is unreasonable because it creates a greater restraint upon Harthcock than necessary in that it contains no geographical limitations, neither defines nor limits "similar" services, and contains an unreasonable time limit. Appellees argue that, because the noncompete covenant constitutes an unreasonable restraint of trade, it is unenforceable on grounds of public policy. *See Martin*, 793 S.W.2d at 668.

Zep asserts that the noncompete covenant contains reasonable geographic limitations of "within a 100–mile radius of DeSoto, Texas." The "Duties" section of the employment agreement states that "[f]or purposes of this Agreement, the 'Territory' shall refer to the geographic area as described on Exhibit 'A'." Exhibit A provides that the "[t]erritory shall be City of DeSoto, Texas[,] and area within 100 mile radius of DeSoto, Texas." Zep argues that, although the employment agreement does not specifically refer to the definition of territory in Exhibit A, it can be inferred by reading the contract as a whole that the territory reference is intended to control the entire agreement, including the geographical scope of the noncompete covenant.

▆▆▆▆ We recognize that what constitutes a reasonable area generally is considered to be the territory in which the employee worked while in the employment of his employer. *Justin Belt Co. v. Yost*, 502 S.W.2d 681, 685 (Tex.1973); *Diversified Human Resources Group v. Levinson–Polakoff*, 752 S.W.2d 8, 12 (Tex.App.—Dallas 1988, no writ). However, the noncompete covenant does not limit its scope to the "territory." It makes no reference to geographical locations.

---

**5.** Although entitled "Covenant Regarding Employment," this covenant is in effect a noncompete covenant.

Section 15.50(2) of the Business and Commerce Code provides, among other things, that a noncompete covenant is enforceable to the extent that it contains *reasonable limitations as to geographical area*. The noncompete covenant in this case contained *no* limitation as to geographical area. Thus, the noncompete covenant does not comply with section 15.50(2) in this regard. The noncompete covenant, if enforced as written, would prohibit Harthcock from working as an industrial chemist anywhere, regardless of whether he sought employment in an area not serviced by Zep or not serviced by him during his employment with Zep. Noncompete covenants with broad geographical scopes have been held unenforceable, particularly when no evidence establishes that the employee actually worked in all areas covered by the covenant. *Diversified Human Resources Group*, 752 S.W.2d at 12; *Martin*, 671 S.W.2d at 709. We hold that the noncompete covenant here does not contain a reasonable restriction of geographical area and is, therefore, unenforceable on grounds of public policy. We overrule Zep's twelfth and thirteenth points.

### C. Reformation

In its fourteenth point, Zep argues that the trial court has a duty as a matter of law to reform the noncompete covenant if it is unreasonable. Section 15.51(c) of the Texas Business and Commerce Code provides:

> If the covenant meets the criteria specified by Subdivision (1) of Section 15.50 of this code [*i.e.*, it is ancillary to an otherwise enforceable agreement] but does not meet the criteria specified in Subdivision (2) of Subsection 15.50 [*i.e.*, it contains unreasonable limitations], the court, at the request of the promisee, *shall reform* the covenant to the extent necessary to cause the covenant to meet the criteria specified by Subdivision (2) of Section 15.50 and enforce the covenant as reformed, *except* that the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the

promisee shall be limited to injunctive relief.

TEX.BUS. & COM.CODE ANN. § 15.51(c) (Vernon Supp.1992) (emphasis added).

As previously stated, the noncompete covenant meets the criteria specified in section 15.50(1) of the Texas Business and Commerce Code because it is ancillary to an enforceable employment agreement. However, it does not meet the criteria specified in section 15.50(2) because it does not contain a reasonable geographical limitation. In its response to appellees' motion for summary judgment, Zep requested the trial court to reform the noncompete covenant and to *enjoin* Harthcock's violation of that covenant. Upon request by Zep, the trial court was required to reform the noncompete covenant to the extent necessary to cause it to meet the section 15.51(c) criteria.

Had the trial court reformed the noncompete covenant, it could have awarded only injunctive relief. On June 24, 1991, Harthcock filed a motion to dismiss Zep's claims for injunctive relief against him, asserting that his contractual obligations not to compete or to disclose trade secrets have expired, rendering any injunction claim moot. Zep, in its response to the motion, stated that it no longer seeks injunctive relief and that the only issue on appeal is whether it may pursue its causes of action for *damages*. Thus, Zep no longer seeks the only relief available to it upon reformation of the unenforceable noncompete covenant. Accordingly, we need not remand the cause to the trial court for reformation of the noncompete covenant. We overrule Zep's thirteenth point.

### ENFORCEABILITY OF THE NONDISCLOSURE COVENANT

In its fourth point, Zep argues that the trial court erred in granting summary judgment because the nondisclosure covenant is not part of an otherwise unenforceable noncompete covenant. Appellees contend that the nondisclosure covenant is part of the unenforceable noncompete covenant because both covenants are contained in the

**662**

employment agreement and because both seek to protect Zep from disclosure of certain information.

The mere fact that a noncompete covenant is void does not render void the remainder of the employment contract. *Hi–Line Elec. Co. v. Dowco Elec. Prods.,* 765 F.2d 1359, 1363 n. 5 (5th Cir.1985) (applying Texas law); *Rogers v. Wolfson,* 763 S.W.2d 922, 925 (Tex.App.—Dallas 1989, writ denied). Where a contracting party agrees to perform separable acts, and one is void, the invalid provision may be severed from the valid provision and the valid provision enforced if the intent of the parties is not thereby frustrated. *Murrco Agency, Inc. v. Ryan,* 800 S.W.2d 600, 605 n. 9 (Tex.App.—Dallas 1990, no writ); *Rogers,* 763 S.W.2d at 925. The nondisclosure covenant seeks to protect trade secrets or confidential information learned by Harthcock during his employment with Zep. Unlike the noncompete covenant, it does not necessarily restrain Harthcock's choice of employment and does not completely prevent Harthcock from competing with Zep. The promises not to compete and not to disclose are separable, and the unenforceability of the noncompete covenant does not render void the nondisclosure covenant. Thus, the trial court erred if it granted summary judgment on the ground that the nondisclosure covenant is unenforceable because it is part of an otherwise unenforceable noncompete covenant. We sustain Zep's fourth point.

In its fifth and sixth points, Zep contends that the trial court erred in granting summary judgment because nondisclosure covenants are not against public policy and are not required to contain reasonable time or geographical limitations. Appellees contend that the nondisclosure covenant is an unreasonable restraint of trade because it contains an unreasonable period of time and has no geographical limitations.

The nondisclosure covenant at issue provides in pertinent part as follows:

(a) Employee agrees that during the term of Employee's employment with Zep and *at all times following the termination* of Employee's employment with Zep, whether such termination is voluntary or involuntary, Employee will not, for or on behalf of Employee or any person, persons, partnership, or corporation (except Zep), directly or indirectly, use for Employee's own benefit or disclose to any other party *any trade secrets of Zep* disclosed or made known to Employee at any time during Employee's employment with Zep. "Trade secrets" as used herein means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, or improvement that is valuable and not generally known to competitors of Zep.

(b) Employee agrees that during the term of Employee's employment with Zep and *for a period of twenty-four (24) months following the termination* of Employee's employment with Zep, whether such termination is voluntary or involuntary, Employee will not, for or on behalf of Employee or any person, persons, partnership, or corporation (except Zep) directly or indirectly, use for Employee's own benefit or disclose to any other party *any confidential information* of Zep disclosed or made known to Employee at any time during Employee's employment with Zep. "Confidential information" as used herein means any data or information, other than trade secrets, that is material to Zep and not generally known by the public, including, without limitation, customer lists, pricing policies, prices, product development plans, and market strategies.

(Emphasis added.)

Appellees assert that nondisclosure covenants are subject to the same requirements for enforceability as noncompete covenants. *See Unitel Corp. v. Decker,* 731 S.W.2d 636 (Tex.App.—Houston [14th Dist.] 1987, no writ). In *Unitel,* the employment agreement contained a covenant that prohibited the former employee for one year from: (1) making known information concerning Unitel's present or potential customers; (2) soliciting Unitel's customers; and (3) selling goods connected with the sound communication equipment

business or equipment or services of a similar nature or which serves the same functions as any sold by Unitel. *Id.* at 638. The court of appeals labelled this a noncompete covenant and analyzed it accordingly. However, the court never stated that nondisclosure covenants are subject to requirements of reasonable time, geographical, and scope-of-activity limitations. To the extent that *Unitel Corp.* might be interpreted to hold that nondisclosure covenants are subject to reasonable time, geographical, and scope-of-activity requirements, we decline to follow it.

▮▮▮▮ Noncompete covenants are different than nondisclosure covenants. Noncompete covenants restrain trade and are enforceable only if their terms are reasonable. *Id.* at 639; *see* TEX.BUS. & COM.CODE ANN. § 15.50. Nondisclosure covenants, on the other hand, are not restraints on trade. They do not necessarily restrict a former employee's ability to compete with the former employer. Nondisclosure covenants do not prohibit the former employee from using, *in competition with the former employer,* the *general* knowledge, skill, and experience acquired in former employment. *American Precision Vibrator Co. v. National Air Vibrator Co.,* 764 S.W.2d 274, 278 (Tex.App.—Houston [1st Dist.] 1988, no writ) (citing *Johnston v. American Speedreading Academy, Inc.,* 526 S.W.2d 163, 166 (Tex.Civ.App.—Dallas 1975, no writ)). The nondisclosure covenant prevents only the disclosure of trade secrets and confidential information acquired by the former employee. Because of these differences, noncompete covenants are against public policy unless they are reasonable, but nondisclosure covenants are not against public policy. *See Hi–Line Elec. Co.,* 765 F.2d at 1363 n. 5.

We find no Texas case requiring that enforceable nondisclosure covenants contain time, geographical, or scope-of-activity limitations. Employers have an interest in protecting trade secrets and confidential information disclosed to employees during the course of the employment relationship, especially when, as here, the former employee had signed an employment agreement containing a nondisclosure covenant. If former employees were permitted to disclose such information in some geographical areas or after a period of time, businesses such as Zep would be unable to protect their trade secrets or confidential information. We conclude that, because nondisclosure covenants are not restraints on trade, reasonable time, geographical, and scope-of-activity limitations are not prerequisites to enforceability. Thus, the trial court erred if it granted summary judgment on the ground that the nondisclosure covenant contains an unreasonable time limitation and no geographical limitation. We sustain points five and six.

## TORTIOUS INTERFERENCE CLAIMS

In its seventh through eleventh points, Zep contends that the trial court erred as a matter of law in granting summary judgment on its tortious interference claims against Panther. Specifically, Zep asserts that: (1) its tortious interference claim is based on the entire employment agreement, not solely on the noncompete covenant; (2) a cause of action exists for tortious interference with an employment relationship regardless of how the employment agreement is characterized; (3) it raised a genuine issue of material fact concerning whether Panther tortiously interfered with an existing contractual relationship between Zep and Harthcock; and (4) its tortious interference claim is based partly upon enforceable noncompete and nondisclosure covenants.

▮▮▮▮ Texas law protects existing and prospective contracts from interference. To establish tortious interference with contractual relations, the plaintiff must prove: (1) a contract; (2) an intentional and willful act interfering with the contract that was calculated to cause damage to the plaintiff; and (3) actual damages. The privilege of legal justification or excuse is an affirmative defense to a claim of tortious interference. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

▮▮▮▮ We previously held the noncompete covenant unenforceable as a matter of law. An action for *damages* may not be

predicated upon the breach of an unenforceable noncompete clause.[6] *Juliette Fowler Homes, Inc.,* 793 S.W.2d at 663; *see Travel Masters, Inc.,* 35 Tex.Sup.Ct.J. at 255–56 (noncompete covenants that are unreasonable restraints of trade or unenforceable on grounds of public policy cannot form the basis of an action for tortious interference). Because Zep no longer seeks injunctive relief in this case, we affirm the trial court's summary judgment on Zep's claim against Panther for tortious interference with the noncompete covenant.

We previously concluded that the nondisclosure covenant is enforceable. The ground for summary judgment urged by appellees was that Zep could not base its tortious-interference claim on the unenforceable nondisclosure covenant. Because that covenant is enforceable, we conclude that the trial court erred in granting summary judgment on Zep's claim against Panther for tortious interference with the nondisclosure covenant.

### CONCLUSION

We affirm the trial court's summary judgment on Zep's claims for breach of and tortious interference with the noncompete covenant. We reverse and render judgment that the nondisclosure covenant is not unenforceable as a matter of law and remand for trial Zep's causes for breach of and tortious interference with the nondisclosure covenant.

We affirm in part, reverse and render in part, and reverse and remand in part.

---

**6.** We recognize that the unenforceability of a contract is not a defense to a claim of tortious interference with a voidable contract. *Sterner,* 767 S.W.2d at 689 (citing *Clements v. Withers,* 437 S.W.2d 818, 821 (Tex.1969)).