**Affirm in part; Reverse and Remand in part; Opinion Filed November 7, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00464-CV

### ROCKY SAVAGE AND ELENA SAVAGE, D/B/A CHILL OUT AUSTIN, Appellant
### V.
### SPORT SUPPLY GROUP, INC., Appellee

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-04516**

## MEMORANDUM OPINION

Before Justices Moseley, Lang, and Richter[1]
Opinion by Justice Lang

Rocky and Elena Savage ("Savage") contend the trial court erred in rendering summary judgment against their claims and in favor of Sport Supply Group, Inc. ("SSG") because genuine issues of material fact remain to be decided. Savage's claims arise under an agreement where he conveyed to SSG all rights to certain sports-related products he designed in exchange for, among other things, royalties on future sales of certain products.

In his single issue, Savage raises two points, contending the defenses raised by SSG should not have been sustained by the trial court. First, Savage argues the trial court's judgment erroneously denied his claim for a 3% royalty to be paid from the sale of products known as "Drinkers." Specifically, he alleges the trial court incorrectly interpreted the agreement to

[1] The Hon. Martin Richter, Justice, Assigned

conclude it did not provide for royalties from sales of "Drinkers." Second, Savage contends the trial court erred in rendering summary judgment barring his claim for a 3% royalty from the sale of other products known as "Misters" and "Foggers" based on SSG's affirmative defense of the statute of limitations.[2] Because all dispositive issues are settled in law, we issue this memorandum opinion. Tex. R. App. P. 47.2(a), 47.4. The background of the case is well known to the parties. Therefore, we do not recite it here in detail. For the reasons set forth below, we affirm in part and reverse in part the trial court's order granting summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In early 2003, Savage demonstrated his "Sportscool" products to SSG (then known as Collegiate Pacific). Shortly after the demonstration, the president of SSG, Adam Blumenfeld, advised Savage that SSG wanted to purchase Savage's "Sportscool brand" and e-mailed a term sheet to Savage. This term sheet stated that Savage would be paid a 3% royalty on the sales price "for every unit sold." Savage accepted the terms, and a letter agreement was executed on May 13, 2003. The agreement provided for the sale of Savage's "Sportscool brand," Savage's employment as an independent contractor, and periodic payments to Savage for royalties on sales of certain products, independent contractor fees, and expenses.

The Introductory Paragraph of the agreement provides in part:

This letter shall serve as the full and final agreement between [Savage] (Proprietor and 100% owner of Sportscool Inc.) and [SSG]. [Savage] wishes to sell the perpetual rights to the Sportscool brand, Sportscool actual and intellectual property, and designs for the Sportscool Cooling Systems to [SSG].

---

[2] In his brief, Savage's argument is worded as though the statute of limitations had been raised as an affirmative defense to his claim for the "Misters" and "Foggers," as well as to his claim for "Drinkers." However, the statute of limitations argument as to the "Drinkers" was not raised in the trial court, so this contention will not be considered here.

Paragraph 1(a) of the agreement defines "Sportscool Cooling Systems" (emphasis added):

"Sportscool Cooling Systems" shall mean any machine, in whole or part designed by Rocky Savage for the use of cooling players on a sports field of play or used in a commercial or residential environment of any kind. *This shall include the "Mister" and the "Fogger" as well as any and all other products that relate to sports cooling machines*; all brands, names, actual and intellectual properties connected herewith.

Paragraph 3, entitled "Royalty for Sportscool Units Sold," states that SSG "agrees to pay [Savage] a 3% royalty on the selling price of the [M]ister and the [F]ogger for a four (4) year period." A handwritten addition to this provision, initialed by Savage and SSG, states that the royalty payments were to be "paid monthly."

During the term of the agreement, Savage made known to SSG he believed he had not been paid all the royalties he was due. Then, on April 8, 2010, Savage filed suit against SSG, making several claims, including breach of contract. In response, SSG filed a general denial answer and, among other affirmative defenses, raised the statute of limitations. Between the time SSG filed a motion for summary judgment, described below, and the filing of Savage's response, Savage dismissed all claims except breach of contract.

SSG filed a motion for summary judgment, identified as asserting both traditional and no-evidence grounds. Although Savage's breach of contract claim was very generally alleged in his original petition, his affidavit in support of his response to SSG's motion identified with more particularity the breaches he claimed. First, although "Drinkers" were not specifically referred to in the written agreement, Savage alleged that "Drinkers" were included within the definition of "Sportscool Cooling System," and he was entitled to a 3% royalty from SSG's sale of

"Drinkers." Second, Savage complained generally that SSG had failed to pay him all of the royalties he was due for the sales of "Misters" and "Foggers."[3]

SSG argued Savage was not entitled to any royalties from the sale of "Drinkers" because the agreement unambiguously provided for royalties only from sales of "Misters" and "Foggers." Further, SSG argues the four-year statute of limitations also bars any recovery for unpaid royalties regarding sales of "Misters" and "Foggers" "to the extent that [Savage] believed that any such non-payment breach occurred prior to April 8, 2006," four years before the date suit was filed.[4]

After considering the pleadings, SSG's motion, Savage's response, and oral arguments, the trial court granted summary judgment for SSG by order dated January 19, 2012. This appeal followed.

## II. CONTRACT AMBIGUITY

### A. Standard of Review

"[T]he party moving for summary judgment has the burden of showing [that] no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Boulle v. Boulle*, 160 S.W.3d 167, 172 (Tex. App. — Dallas 2005, pet. denied) (citing Tex. R. Civ. P. 166a(c); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972)). "A traditional movant has the burden of proving all essential elements of its cause of action or defense as a matter of law." *Id.*

---

[3] Savage has also alleged only on appeal that, although the contract term provided for in his initial agreement with SSG was for a period of four years and ended in 2007, SSG continued to pay him commissions on sales until January 2009, when his employment with SSG was terminated. Following this termination, Savage claims they entered into a subsequent agreement where SSG would pay him a referral fee of 3% on gross sales of "any Sports School (sic) Product." Because this issue was raised only on appeal, but not in the trial court, it will not be considered. TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal."). *See also Strange v.HRsmart, Inc.*, 400 S.W.3d 125, 128 (Tex. App. — Dallas 2013, no pet.) ("Our appellate review of the summary judgment is limited to those issues presented to the trial court."); *McCoy v. Rogers*, 240 S.W.3d 267, 273 n.7 (Tex. App. — Houston [1st Dist.] 2007, pet. denied) (finding that appellant may not raise an argument on appeal that he did not present in the trial court in his opposition to summary judgment).

[4] In its brief, SSG argues the statute of limitations bars Savage's claim for royalties on "Drinkers" as well. However, this argument was not raised in its Motion for Summary Judgment. Therefore, we will not address that. TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 166a(c). *See also Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) ("[A] summary judgment cannot be affirmed on grounds not expressly set out in the motion or response.").

(citing *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990)). "By contrast, when a party moves for summary judgment under rule 166a(i), asserting that no evidence exists as to one or more elements of a claim on which the nonmovant would have the burden of proof at trial, the burden is on the nonmovant to present enough evidence to raise a genuine issue of material fact on each of the challenged elements." *Id.* (citing Tex. R. Civ. P. 166a(i); *Gen. Mills Rest., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex. App. — Dallas 2000, no pet.)). "If the nonmovant fails to do so, the trial judge must grant the motion." *Id.*

Finally, to succeed on a motion for summary judgment, a defendant "must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense." *Boulle*, 160 S.W.3d at 172 (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 657 (Tex. App. — Dallas 1992, no writ)). Where the judgment does not specifically indicate the basis on which summary judgment has been granted, the judgment will be affirmed "if any of the movant's theories are meritorious." *Id.*, 160 S.W.3d at 173 (citing *Rogers v. Ricane Enter., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989)).

### B. Applicable Law

"Whether a contract is ambiguous is a question of law for the court." *United Protective Servs., Inc. v. West Village Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App. — Dallas 2005, no pet.). A contract is ambiguous if it is susceptible to more than one meaning. *Id.* It is "not ambiguous if it can be given a definite or certain legal meaning." *Id.* Moreover, a contract is not ambiguous simply because the parties disagree on the contract's meaning, the contract is not clear, or the contract suffers from "inartful drafting." *Nexstar Broad., Inc. v. Fidelity Commc'ns Co.*, 376 S.W.3d 377, 382 (Tex. App. — Dallas 2012, no pet.).

When construing a contract, the court "must ascertain and give effect to the parties' intentions as expressed in the document." *Frost Nat. Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005). The court strives to harmonize all provisions of the contract "by analyzing the provisions with reference to the whole agreement." *Id.* at 312. This "four corners" approach means that the parties' intentions will be ascertained from a reading of the instrument as a whole, instead of isolated portions of the agreement. *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App. — Dallas 2005, no pet.). The court "construe[s] contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat. Bank*, 165 S.W.3d at 312.

Where there is an apparent conflict between the provisions of a contract, the court will "attempt to harmonize the two provisions and assume the parties intended every provision to have some effect." *United Protective Servs., Inc.*, 180 S.W.3d at 432. However, where one provision cannot be given effect without rendering another one meaningless, the contract will be found ambiguous. *Id.*

If a contract is determined to be unambiguous, the court may then construe the contract as a matter of law. *Frost Nat. Bank*, 165 S.W.3d at 312. However, if the contract is ambiguous, "the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue." *United Protective Servs.*, Inc., 180 S.W.3d at 432.

Finally, where an agreement is unambiguous, it will be enforced as written, and the court will not receive parol evidence to create an ambiguity nor to give the contract a meaning different from its plain language. *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445 (Tex. 2011). "Only where a contract is ambiguous may a court consider the parties' interpretation and 'admit extraneous evidence to determine the true meaning of the

statement.'" *Id.* (quoting *David J. Sacks, P.C. v. Haden*, 225 S.W.3d 447, 450-51 (Tex. 2008) (per curiam)). However, "[t]he rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text." *Hous. Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011). The Texas Supreme Court has concluded these circumstances include "the commercial or other setting in which the contract was negotiated and other objectively determinable factors that gives a context to the transaction between the parties." *Id.*

## C. Application of the Law to the Facts

In its Motion for Summary Judgment, SSG argued that it was not obligated to pay royalties for sales of "Drinkers" because the agreement unambiguously did not provide for royalties from these sales.

In his brief, Savage argues generally that the "only logical interpretation" of the agreement is that it provides a 3% royalty from sales of "Drinkers."[5] Savage asserts we must read Paragraph 1(a) and Paragraph 3 together. We interpret his argument to be that this construction follows from harmonizing various paragraphs within the agreement. Paragraph 1(a) defines the term "Sportscool Cooling Systems" to include "Misters," "Foggers," and "any and all other products that relate to sports cooling machines." Further, he contends the title of Paragraph 3 itself, "Royalty for Sportscool Units Sold," is so broad as to expand the scope of products for which he is owed a royalty to all "Sportscool Cooling Systems" beyond "Misters" and "Foggers" to include sales of "Drinkers." Savage claims that any other construction would render at least one of the agreement's provisions meaningless. Alternatively, Savage argues the agreement should be considered ambiguous only if any other interpretation is adopted.

---

[5] He justifies this interpretation in his brief as follows: "Several things are clear; (i) SSG locked all of [Savage]'s future developed products into the Agreement; (ii) The 3% royalty payment was to be made on Misters and Foggers being the only products [Savage] had designed to (sic) the time of the Agreement and (iii) [Savage] would expect a 3% royalty on all subsequently developed products and certainly would not have benefited SSG without the work of his labors with the payment of a 3% royalty."

SSG argues the agreement is not ambiguous because Paragraphs 1(a) and 3 do not conflict. Rather, SSG asserts neither refers to royalties for "Drinkers," and although Paragraph 3 is entitled "Royalty for Sportscool Units Sold," the language of that paragraph only states royalties are payable for sales from "Misters" and "Foggers."[6]

We determine the parties' intentions from reading the agreement as a whole and not from isolated parts thereof. *See Calpine Producers Servs., L.P.*, 169 S.W.3d at 787. Nothing in this agreement refers to "Drinkers." Therefore, we conclude the trial court did not err in granting summary judgment against Savage on his royalty claim as to sales of "Drinkers."

## III. STATUTE OF LIMITATIONS

*A. Applicable Law*

"A breach of contract occurs when a party fails or refuses to do something he has promised to do." *Townewest Homeowners Ass'n, Inc. v. Warner Commc'n Inc.*, 826 S.W.2d 638, 640 (Tex. App. — Houston [14th Dist.] 1992, no pet.). "It is well-settled law that a breach of contract claim accrues when the contract is breached." *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002); see also *Smith v. Ferguson*, 160 S.W.3d 115, 123 (Tex. App. — Dallas 2005, pet. denied). "Limitations begins to run upon accrual of the cause of action." *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 425 (Tex. App. — Dallas 2012, no pet.) (quoting *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006)). Generally, contract disputes are governed by a four-year statute of limitations, requiring the plaintiff to bring suit within four years after the day the claim accrues. Tex. Civ. Prac. & Rem. Code § 16.05l (West 2013); *Stine*, 80 S.W.3d at 592.

"When the terms of an agreement call for periodic payments during the course of the contract, a cause of action for such payments may arise at the end of each period before the

---

[6] Neither party asserts that the agreement is ambiguous as to "Misters" or "Foggers."

contract is complete." *Id.* (citing *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. Civ. App. — Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Goldfield v. Kassoff*, 470 S.W.2d 216 (Tex. Civ. App. — Houston [14th Dist.] 1971, no writ)). That is, "[t]he cause of action accrues when each payment is due, and the injured party has four years to bring suit." *F.D. Stella Prods. Co. v. Scott*, 875 S.W.2d 462, 465 (Tex. App. — Austin 1994, no pet.); *see also Townewest Homeowners Ass'n, Inc.*, 826 S.W.2d at 640 (a new claim accrues and a new limitations period begins each time cable companies fail to make a required quarterly payment of a percentage of gross receipts to homeowners' associations).

"The movant must conclusively establish all elements of the affirmative defense of limitations, leaving no genuine issue of material fact." *Potter v. Kaufman & Broad Home Sys. of Texas, Inc.*, 137 S.W.3d 701, 704 (Tex. App. — San Antonio 2004, no pet.); *see also KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). This burden is twofold: the movant must prove both when the cause of action accrued and that the discovery rule does not apply. *KPMG Peat Marwick*, 988 S.W.2d at 748 (Tex. 1999).

### B. Application of the Law to the Facts

In SSG's Motion for Summary Judgment, the only defense it raised to Savage's claim for royalties on sales of the "Misters" and "Foggers" was the statute of limitations. Paragraph 3 of the agreement expressly provides for a 3% royalty to be "paid monthly" to Savage for sales of these two products. According to SSG, Savage first complained in 2004 that he had not been paid all of the royalties he was owed for these sales. Specifically, SSG states in its brief, ". . . to the extent that [Savage] believed that any such breach occurred prior to April 8, 2006 – something established by [Savage's] own testimony – a claim for such breach is time barred."

Savage asserts the following in his affidavit in opposition to SSG's motion for summary judgment:

–9–

SSG did not pay me the full 3% royalty on 123 invoices for "Misters" and "Foggers" that SSG sold through SSG's corporate owned dealers and subsidiaries that were subsequently sold to retail customers at a higher retail price on which my 3% royalty should have been calculated . . . The documents produced by SSG document gross sales from 2003-2009 of 1.8 million dollars for "Misters" and "Foggers." My royalty receipts were based on 1.2 million dollars resulting in no payment of royalty on $600,000.00 of sales.

On this record, we cannot agree with SSG's argument that Savage's claim for royalties on "Misters" and "Foggers" is barred by the statute of limitations. Any knowledge Savage may have had in 2004 as to royalties not paid for sales of "Misters" and "Foggers" does not automatically operate to bar any and all claims for those royalties. In his affidavit, Savage merely states he is due more money for royalties than he was paid, but he does not state when the royalties became due over the period of the agreement. Further, the record does not otherwise show when the sales occurred for which he claims royalties or when he became aware of any particular sales. Because the agreement required royalties for "Misters" and "Foggers" to be "paid monthly" for sales over a four year period, a new cause of action for any royalty payment accrued each month when a royalty was payable. *See Townewest Homeowners Ass'n, Inc.*, 826 S.W.2d at 640. So, the limitations period began to run as to each royalty payment when it was payable. *See id.*

SSG has not met its burden to demonstrate that there are no issues of material fact as to its statute of limitations defense. Thus, the trial court erred in rendering summary judgment as to the royalty claims regarding "Misters" and "Foggers."

## IV. CONCLUSION

The summary judgment that Savage takes nothing on his claim for royalties from "Drinkers" is affirmed. The summary judgment is reversed as to Savage's remaining claims, and the case is remanded to the trial court for proceedings consistent with this opinion.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

120464F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROCKY SAVAGE & ELENA SAVAGE
D/B/A CHILL OUT AUSTIN, Appellant

No. 05-12-00464-CV        V.

SPORT SUPPLY GROUP, INC., ART
COERVER, & ADAM BLUMENFELD,
Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-04516.
Opinion delivered by Justice Lang.   Justices
Moseley and Richter participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED IN PART** and **REVERSED IN PART**.

We **REVERSE** the portion of the trial court's judgment on the breach of contract claim
by appellant Rocky Savage & Elena Savage d/b/a Chill Out Austin, and we **REMAND** this
cause to the trial court for further proceedings consistent with this opinion.  In all other respects,
the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 7th day of November, 2013.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE