Bobby C. STONE, Individually and Brent Wade Jones, Individually and d/b/a East Texas Telecom, Appellants,

v.

## GRIFFIN COMMUNICATIONS AND SECURITY SYSTEMS, INC., Appellee.

No. 12–01–00010–CV.

Court of Appeals of Texas, Tyler.

July 25, 2001.

Coy Johnson, Sulphur Springs, for Appellant.

Philip Alexander, Emory, for Appellee.

Panel consisted of DAVIS, C.J., WORTHEN and GRIFFITH, JJ.

DAVIS, Justice.

Bobby C. Stone, Individually ("Stone") and Brent Wade Jones, Individually and D.B.A. East Texas Telecom ("Jones") (collectively "Appellants") appeal the trial court's order granting a temporary injunction in favor of Appellee, Griffin Communications and Security Systems, Inc. ("Griffin").[1] Appellants raise eight issues on appeal. We reform, and affirm the temporary injunction as reformed.

## BACKGROUND

Griffin sells, installs, repairs, maintains and monitors communication and security systems throughout a twenty-two county area in East Texas. Griffin has been in the telephone and security business for over fifteen years, and during such time, has developed a large customer base consisting of approximately 1500 accounts of both businesses and individuals. Griffin has written service agreements with each of its customers whereby Griffin agreed to maintain their telephone and security systems.[2]

During the time in which it has been in business, Griffin has developed a customer data base consisting of each customer's individual needs and details regarding the customer's equipment. The information contained in Griffin's database is compiled by Griffin based on its interaction with its customers and is not freely available to the public.

Jones and Stone were hired by Griffin in 1998. Subsequently, On October 12, 1998, Jones and Stone, each entered into an employment contract with Griffin. Each of the employment agreements (the "1998 contracts") stated that "the employment of the Employee shall continue only as long

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp.2001).

2. Some of the contracts are lease agreements for the systems whereby Griffin also agrees to maintain the systems, while other contracts are strictly maintenance agreements.

as the services rendered by the Employee are satisfactory to the Employer, regardless of any other provision contained in this Agreement." The contracts further stated that "the Employer shall be the sole judge as to whether the services of the Employee are satisfactory." The 1998 contracts also contained non-competition agreements, which stated:

> 4.0.1. For a period of five years (5) immediately following the termination of the Employee's employment with the Employer, the Employee shall not either directly or indirectly:
>
> a. Make known to any person, firm or corporation the names and addresses of any of the customers of the Employer or any other information pertaining to the customers.
>
> b. Call on, solicit, or take away, or attempt to call on, solicit, or take away, any of the customers of the Employer on whom the Employee called or with whom he became acquainted during the term of employment with the Employer under this Agreement, either for himself or for any other person, firm, or corporation.
>
> c. Directly or indirectly, as an employee, agent, proprietor, partner, stock-

holder, officer, director or otherwise render any services to or on the Employee's own behalf engage in or own a part or all of any business which shall engage in the sale or leasing of security systems, or related equipment within Rains, Hunt, Wood, Hopkins, Franklin, Rockwall, Kaufman, Van Zandt, Delta, Upshur, Lamar, Henderson, Gregg, Rusk, Harrison, Nacagdoches, Camp, Morris, Titus, Cherokee, Anderson, and Smith counties without prior written consent of Employer.

On January 1, 1999, Appellants each executed subsequent, twelve-month, written employment agreements with Griffin (the "1999 contracts"). The 1999 contracts expressly supercede all other agreements between the parties, but are substantially the same as the 1998 contracts.[3] The only notable difference between the 1998 and 1999 contracts is that the 1999 contracts expanded the geographical area covered by the non-compete clause to include twelve additional counties.

Jones resigned his employment with Griffin in August 2000. Stone resigned in October 2000. Subsequently, Jones began operating his own business, known as East Texas Telecom, which engaged in the selling, leasing, installation and maintenance

---

**3.** We note that the focus of the parties at trial was primarily the language of the 1998 Contracts regarding the issue of consideration. Appellant contends that the contract executed by Jones in 1998 stated the term of employment as indefinite months, and therefore, was an at-will employee. However, it has been held that when the term of employment is indefinite **and** absent a specific contract term to the contrary, such employment is terminable at-will. *See Mott v. Montgomery County, Texas,* 882 S.W.2d 635, 637 (Tex.App.—Beaumont 1994, writ denied); *see also United Transp. Union v. Brown,* 694 S.W.2d 630, 632 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.); *Ramos v. Henry C. Beck,* 711 S.W.2d 331, 336 (Tex.App.—Dallas 1986, no writ). In the in-

stant case, Jones's 1998 Contract specifically subjects the term of "indefinite months" to the termination provisions of Article 5 and Article 3.04, which, as discussed below, do not create an at-will relationship. Thus, the indefinite term of Jones's 1998 contract is not relevant to the issue of consideration. As a result, the portions of the two sets of contracts relevant to the consideration issue are the same. It follows that if the 1998 contracts are supported by valid consideration, then the 1999 contracts are likewise supported by valid consideration. As such, in our discussion of the issue of consideration, we will refer to the identical language of the 1998 and 1999 contracts collectively as "the contracts."

of telephone systems within the geographic region restricted by the non-competition agreement. Following his resignation from Griffin, Stone began to work for Jones.

Griffin filed suit to enforce the provisions of the non-competition agreement and filed an application for temporary injunction. Following an evidentiary hearing, the trial court granted Griffin's application for temporary injunction and ordered that Appellants be enjoined from:

(a) Making known to any person, firm, or corporation the names and addresses of any of the customers of Griffin Communications and Security Systems, Inc. or any other information pertaining to its customers;

(b) Calling on, soliciting, taking away, or attempting to call on, any of Griffin Communications and Security Systems, Inc.'s customers;

(c) Selling, leasing, installing or maintaining security and telephone systems and related equipment, whether on their own behalf, or as an employee within the counties of Smith, Henderson, Gregg, Cherokee, Nacogdoches, Van Zandt, Hopkins, Rains, Wood and Hunt Counties all within the State of Texas;

(d) As an employee, agent, provider, partner, stockholder, officer, director or otherwise, render any services to, or on the Defendants' own behalf, engage in or own a part of or all of any business which shall engage in the selling or leasing of security systems, telephone systems, or related equipment within the counties of Smith, Henderson, Gregg, Cherokee, Nacogdoches, Van Zandt, Hopkins, Rains, Wood and Hunt Counties all within the State of Texas; and

(e) Interfering with any contractual relationships created between Griffin Communications and Security Systems, Inc. and its customers.

### STANDARD OF REVIEW

A trial court has great discretion in granting or denying a temporary injunction and we will not disturb the trial court's ruling absent a clear abuse of discretion. *See Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex.1978), *reversed on other grounds, Davis v. Huey*, 620 S.W.2d 561 (Tex.1981); *see also Burgess v. Permian Court Reporters, Inc.*, 864 S.W.2d 725, 727 (Tex.App.—El Paso 1993, writ dism'd w.o.j.). We must draw all legitimate inferences from the evidence in a light most favorable to the trial court's order. *See Burgess*, 864 S.W.2d at 727. An abuse of discretion does not exist when the trial court bases its decision on conflicting evidence. *See Davis*, 571 S.W.2d at 862. A trial court abuses its discretion in this area only when the record reflects that the findings necessary to support the order are not supported by some evidence of a substantial and probative character. *See Burgess*, 864 S.W.2d at 727.

### DISCUSSION

In their first seven issues, Appellants contend that the trial court erroneously granted the temporary injunction against them because the covenant not to compete did not meet the criteria set forth in Section 15.50 of the Texas Business and Commerce Code. Section 15.50 states:

[A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater re-

straint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COM.CODE ANN. § 15.50(a) (Vernon Supp.2001).

■ Appellants contend that the covenant not to compete in the instant case is not ancillary to an otherwise enforceable agreement because Appellants were at-will employees, and thus, any consideration for Appellants to sign the employment contract was illusory. Consideration for a promise, by either the employee or the employer *in an at-will employment* context, cannot be dependent on a period of continued employment. *See Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 644–45 (Tex.1994) (emphasis added). However, Griffin contends that its employment relationship with Appellants was not at-will, but rather, was terminable by Griffin only if Griffin determined that Appellants' work was not satisfactory. Griffin further contends that the promise of continued employment under such circumstances is adequate consideration for the employment agreement.

In order to determine the nature of the relationship between Griffin and Appellants, we need look no further than the contracts, which were introduced as evidence at the hearing on Griffin's application for temporary injunction. Although Article 5 of the contracts sets forth circumstances which will result in termination,[4] Appellants do not contend that any of those terms create an at-will relationship. Rather, Appellants contend that the following portion of the contracts creates an at-will relationship:

3.04. The employment of the Employee shall continue only as long as the services rendered by the Employee are satisfactory to the Employer, regardless of any other provision contained in this Agreement. The Employer shall be the sole judge as to whether the services of the Employee are satisfactory.

Appellants argue that since the satisfactory nature of Appellants' services was left to Griffin's sole discretion, the employment relationship was at-will. In *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 659 (Tex. App.—Dallas 1992, no writ), the Dallas Court of Appeals dealt with such a scenario. In its analysis, the Court stated:

We read the above provision to mean that Zep would continue to employ Harthcock as long as Harthcock satisfactorily performed his duties, although the president of Zep has the discretion to determine Harthcock's performance is satisfactory.

In Texas, a contract by which one agrees to employ another as long as the services are satisfactory, or which is otherwise expressed to be conditional on the satisfactory character of the services rendered, gives the employer the right to terminate the contract and to discharge the employee whenever the employer, acting in good faith, is actually and honestly dissatisfied with the work. *Lone Star Gas Co. v. Pippin*, 620 S.W.2d 922, 924 (Tex.Civ.App.—Dallas 1981,

4. Article 5 states as follows: "TERMINATION OF EMPLOYMENT. Circumstances Resulting in Termination. 5.01. This Agreement shall terminate on the occurrence of any one of the following events: (a) The death of the Employee; (b) Express termination by the Employer at any time after the Employee fails to perform duties specified in this Agreement, for whatever cause. All obligations of the Employer under this Agreement shall cease upon any such termination; (c) The willful breach of duty, or the habitual neglect or the continued incapacity on the part of the Employee to perform his duties, unless waived by the Employer; (d) The willful or continuing breach of the obligations of the Employer to the Employee under this Agreement, unless waived by the Employee."

writ ref'd n.r.e.); *Hardison v. A.H. Belo Corp.*, 247 S.W.2d 167, 168 (Tex.Civ. App.—Dallas 1952, no writ). There must be a bona fide dissatisfaction or cause for discharge, and dissatisfaction must be founded on acts such as would induce action on the part of a reasonable person. *Porter v. United Motels, Inc.*, 315 S.W.2d 340, 344 (Tex.Civ.App.— Waco 1958, no writ). The employer may not act arbitrarily or without reason in the matter. *Id.* If the employer feigns dissatisfaction and dismisses the employee, the discharge is wrongful. *Hardison*, 247 S.W.2d at 168. Although an employment-at-will contract allows severance of the employment relationship at any time without cause, when an employment agreement is a satisfaction contract, there must be a bona fide dissatisfaction or cause for discharge. *Dallas Hotel Co. v. Lackey*, 203 S.W.2d 557, 563 (Tex.Civ.App.—Dallas 1947, writ ref'd n.r.e.) (op. on reh'g).

*Harthcock*, 824 S.W.2d at 659.

■ We find the logic espoused by the Court in *Harthcock* persuasive and adopt it for the purposes of our analysis of the case at hand. The language of the satisfaction clause at issue in the present case is nearly identical to the clause in *Harthcock*. *Id.* at 658. Thus, for the reasons set forth above, we conclude, that the language of the contracts constitutes sufficient evidence to support the trial court's finding that Appellants' respective employments were not terminable at-will, but rather, were terminable only on the occasion of Griffin's bona fide dissatisfaction or cause for discharge. *Id.* at 659. Having

concluded that Appellants' employment by Griffin was not at-will, we further conclude that there was sufficient evidence to support the trial court's finding that the contracts were based on adequate consideration. *See Currie v. International Telecharge, Inc.*, 722 S.W.2d 471, 475 (Tex. App.—Dallas 1986, no writ), *citing Garcia v. Laredo Collections, Inc.*, 601 S.W.2d 97, 98–99 (Tex.Civ.App.—San Antonio 1980, no writ) ("Texas courts have held that continued employment is sufficient consideration for a covenant not to compete").[5]

Appellants next contend that the trial court erred in finding that restrictions as to time, scope and geographic location set forth in the covenants not to compete were reasonable pursuant to Section 15.50. We will sustain Appellants' contention only if the record reflects that the findings necessary to support the order are not supported by some evidence of a substantial and probative character. *See Burgess*, 864 S.W.2d at 727.

■ First, we consider the reasonableness of the scope of the agreement. Our determination is governed by (1) whether the restriction is greater than necessary to protect the business and goodwill of the employer, (2) whether the employer's need for protection outweighs the economic hardship which the covenant imposes on the departing party, and (3) whether the restriction adversely affects the interests of the public. *See Peat Marwick Main & Company v. Haass*, 818 S.W.2d 381, 386 (Tex.1991). The restrictive covenant must bear some relation to the activities of the employee and must not

---

**5.** Appellants contention that the two-prong test set forth in *Light* must be satisfied is inapplicable to the case at hand. In *Light,* the Supreme Court considered the question of when a separate agreement between an employer and an *at-will* employee could constitute an enforceable agreement to which a covenant not to compete could be ancillary.

*See Light,* 883 S.W.2d at 644. In the case at hand, we have determined that Appellants were not at-will employees. Thus, the employment agreements between Griffin and Appellants, of which the covenants not to compete are a part, are sufficient to satisfy the requirements of Texas Business and Commerce Code section 15.50(a).

restrain his activities into a territory into which his former work has not taken him or given him the opportunity to enjoy undue advantages in later competition with his former employer. *Id.* at 387.

In the instant case, at the hearing on Griffin's application for temporary injunction (the "hearing"), Toby Ben Griffin ("T.B. Griffin"), the president of Griffin, testified that the nature of Griffin's business was related to the selling, leasing, installation and maintenance of security systems. T.B. Griffin further testified that Appellants had gained substantial knowledge, training and experience in selling, leasing, installing and maintaining of security and telephone systems during the period of their employment. The record reflects that Griffin had been in business for fifteen years and, during such time, had developed a unique customer base. The record further reflects that, during their employment by Griffin, Appellants gained access to information regarding Griffin's customers and had received knowledge about the specific equipment possessed and operated by each of Griffin's customers. Specifically, Jones testified that he learned the identity of Griffin's customers, where they were located, and the type of equipment that they were utilizing. Moreover, T.B. Griffin testified regarding Appellants' training. He testified that either he or another experienced technician would accompany new employees for an extended period of time giving them onsite training. The record further reflects that Griffin's employees were provided the opportunity to attend industry-specific schools and training sessions at Griffin's expense.

The covenant not to compete at issue restricts Appellants from (1) engaging in the selling or leasing of security systems, or related equipment, (2) soliciting any customer of Griffin on whom the Appellants called or with whom they became acquainted during the term of employment, and (3) disclosing the names and addresses or any other information pertaining to Griffin customers. Our review of the record reveals that there was some probative evidence that the scope of the agreement was limited to the scope of the business engaged in by Griffin, namely, the selling and leasing of security systems. Contrary to Appellants contentions, the covenant does not impose industry-wide restrictions as it does not prevent them from performing installation or maintenance of systems, so long as they do not sell or lease such systems. Moreover, the non-solicitation clause does not prevent Griffin customers from contacting Appellants for services, so long as Appellants do not solicit business from such customers. Further, the non-solicitation portion of the agreement properly relates only to such customers with whom Appellants had contact while they were employed by Griffin. *See, e.g., John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex.App.—Houston [14th Dist.] 1996, writ denied). We conclude that there was some probative evidence to allow the trial judge to conclude that the restraint created was not greater than necessary to protect Griffin's legitimate interests. We further conclude that there was evidence to support the trial court's finding that the necessity of the restraint created was not outweighed by the hardship to the promisor or injury to the public. Thus, we hold that the covenant not to compete was reasonable as to the scope of activity restrained.

However, while the testimony adduced at trial generally tends to support the scope of the covenant not to compete, we note that the temporary injunction entered by the trial court imposes more restrictions than those set forth in the covenant not to compete. Specifically, the trial court's temporary injunction also prevents

Appellants from installing and maintaining security systems. While the record reflects that such activity was part of Appellants' duties while they were employed by Griffin, it is clear from the language of the covenants themselves, that such restrictions were not contemplated by the parties when they entered into the agreement. The purpose of a temporary injunction is to preserve the status quo of the subject matter of the litigation, pending the trial on the merits. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993). Further, appellate courts may modify an overly broad injunction. *See T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.,* 965 S.W.2d 18, 25 (Tex.App.—Houston [1st Dist.] 1998, no writ), *citing San Augustine Ind. Sch. Dist. v. Woods,* 521 S.W.2d 130, 133 (Tex.Civ.App.—Tyler 1975, no writ). In the case at hand, because it placed additional restrictions on Appellants that were not set forth in the covenant not to compete, the temporary injunction exceeds the preservation of the status quo and was overly broad. Therefore, we hold that by issuing an overly broad order the trial court abused its discretion. *See, e.g., Koch v. Koch,* 27 S.W.3d 93, 95 (Tex.App.—San Antonio 2000, no pet.) ("a trial court abuses its discretion in the following ways: (1) when it attempts to exercise a power that it does not legally possess, (2) if it declines to exercise a power of discretion vested in it by law when the circumstances require that the power be exercised, (3) if it purports to exercise its discretion without sufficient information upon which a rational decision may be made, and (4) if it exercises its power of discretion by making an erroneous choice as a matter of law in the following ways: (i) *by making a choice that is not within the range of choices permitted by law,* (ii) by arriving at its

choice in violation of an applicable legal rule, principle, or criterion, or (iii) by making a choice that is legally unreasonable in the factual-legal context in which it is made") (emphasis added).[6]

■ We next turn to the question of whether the geographic restriction in the covenant not to compete is reasonable. Texas courts have generally held that a geographical limitation imposed on the employee which consists of the territory within which the employee worked during his employment is a reasonable geographical restriction. *See Evan's World Travel, Inc. v. Adams,* 978 S.W.2d 225, 232–33 (Tex. App.—Texarkana 1998, no writ), *citing Property Tax Assocs., Inc. v. Staffeldt,* 800 S.W.2d 349, 351 (Tex.App.—El Paso 1990, writ denied); *Diversified Human Resources Group, Inc. v. Levinson-Polakoff,* 752 S.W.2d 8, 12 (Tex.App.—Dallas 1988, no writ); *Justin Belt Co. v. Yost,* 502 S.W.2d 681, 685 (Tex.1973). In the instant case, the 1999 contracts, which expressly supercede the 1998 contracts, restrict Appellants from conducting certain activities in twenty-two counties located in East Texas. Our review of the record reveals that T.B. Griffin testified that Griffin conducted business in each of these counties. Jones further testified that he, on behalf of Griffin, provided services for persons or business located in the counties restricted by the covenant not to compete in the 1999 contracts. Neither Appellant testified that he worked only in certain counties covered by the 1999 contracts, exclusive of other such counties. Therefore, since the covenant not to compete contained geographical restrictions which were consistent with the area in which Griffin conducted business while Appellants were employed by Griffin, and the record contained uncontra-

**6.** The trial court's temporary injunction will be modified as set forth at the conclusion of this opinion.

dicted evidence that Appellants worked in the covered counties while employed by Griffin, we conclude that such geographical restrictions are reasonable.[7]

 Finally, we consider whether the five-year restriction contained in the covenant not to compete is reasonable. Appellants cite *Stroman* in support of their contention that a five-year limitation has been held unreasonable. Although the covenant in *Stroman* contained a five-year restriction, such a five-year restriction was not found to be unreasonable. *See Stroman,* 923 S.W.2d at 85. Rather, the Houston Court of Appeals concluded that another restriction of the covenant not to compete was unreasonable because it was *unlimited* as to time.[8] *Id.* (emphasis added). Contrary to Appellants' contentions, two to five years has repeatedly been held a reasonable time restriction in a non-competition agreement. *See AMF Tuboscope v. McBryde,* 618 S.W.2d 105, 108 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.), *citing Arevalo v. Velvet Door, Inc.,* 508 S.W.2d 184 (Tex.Civ.App.—El Paso 1974, writ ref'd n.r.e.); *Electronic Data Systems Corp. v. Powell,* 508 S.W.2d 137 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.); *Weber v. Hesse Envelope Co.,* 342 S.W.2d 652 (Tex.Civ.App.—Dallas 1960, no writ). Although no evidence was introduced specifically stating that five years was a reasonable period of restraint, there is ample evidence in the record showing that it would take five years for the infor-

mation received by Appellants while they were employed by Griffin to become outdated. Appellants have provided no evidence contradicting this fact. It follows that there was some evidence on which the trial court could base its finding that five years was a reasonable period of restraint. Therefore, we conclude that the five-year time restriction as set forth in the covenant not to compete is reasonable. Subject to our reformation of the scope of the trial court's order granting temporary injunction, Appellants' issues one through seven are overruled.

 In its final issue, Appellants contend that the trial court erred in setting the bond for an amount that was insufficient to protect Appellants' respective interests. The appellate courts determine the adequacy of the bond set by the trial court on a case-by-case basis after reviewing the record before them. *See Currie,* 722 S.W.2d at 475, *citing Johnston v. American Speedreading Academy, Inc.,* 526 S.W.2d 163, 167 (Tex.Civ.App.—Dallas 1975, no writ). As a general rule, the amount of the bond required on the issuance of a temporary injunction rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *See Currie,* 722 S.W.2d at 475. In the case at hand, the record furnishes no reliable information which would guide us in setting the proper amount of the bond. Appel-

7. In its order granting temporary injunction, the trial court limited the geographic scope of the injunction to ten counties in which Appellants were prohibited from engaging in certain activities. While the trial court's order provides for a more limited geographical scope then contemplated by the parties in the 1999 contracts, Appellee has not complained on appeal that the geographic scope of the trial court's order granting temporary injunction was too narrow. Thus, we decline to address the issue.

8. In *Stroman,* the agreement provided that Stroman would not engage in or have an interest in any business that sold insurance policies or engaged in the insurance agency business within Harris County and all adjacent counties for a period of five years from the date of the agreement. *See Stroman,* 923 S.W.2d at 85. The agreement *also* provided that Stroman would *never* solicit or accept, or assist or be employed by any other party in soliciting or accepting, insurance business from any of Ray & Sons' accounts. *Id.* (emphasis added).

lants contend that they were earning a total amount of $3,600.00 per month in salaries from Griffin and their "income per month should exceed that amount now." However, such speculation as to present earnings is wholly insufficient to allow us to conclude that the trial court, in setting the amount of the bond at $5,000, abused its discretion. Appellants' eighth issue is overruled.

As set forth above, because we have concluded that the scope of activity restricted by the temporary injunction exceeds the restrictions contemplated in the covenants not to compete, we order that the language in the temporary injunction located on page 2, paragraph (c) be reformed to limit the scope of activity as follows:

> IT IS THEREFORE ORDERED that Defendants, **BOBBY C. STONE,** Individually and **BRENT WADE JONES,** Individually and d/b/a **EAST TEXAS TELECOM,** their agents, servants and employees, and all other persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby temporarily and immediately enjoined from either directly or indirectly:
>
> (c) Selling or leasing security and telephone systems and related equipment, whether on their own behalf, or as an employee within the counties of Smith, Henderson, Gregg, Cherokee, Nacogdoches, Van Zandt, Hopkins, Rains, Wood and Hunt Counties all within the State of Texas;

The trial court's order granting injunctive relief as reformed is **_affirmed._**