AMERICAN FRACMASTER, LTD., Appellant,

v.

Larry RICHARDSON, Appellee.

No. 12–00–00183–CV.

Court of Appeals of Texas, Tyler.

Oct. 24, 2001.

William John Bux, Houston, for appellant.

David Watkins, Dallas, for appellee.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

LEONARD DAVIS, Chief Justice.

A declaratory judgment action was brought by Larry H. Richardson ("Richardson") against American Fracmaster, Ltd. ("AFL") to declare a non-competition agreement unenforceable. After a summary judgment hearing, the trial court found the agreement unenforceable, and AFL appealed. We reverse the declaratory judgment in favor of Richardson, render judgment for AFL that Richardson waived his right to contest the enforceability of the non-competition agreement, and reverse and remand AFL's counterclaims for further proceedings on the merits.

### BACKGROUND

Richardson went to work for AFL in 1996. He left for approximately three months (because of another disputed non-competition agreement), then continued working for AFL until the summer of 1999. In December of 1997, Richardson entered into an Employment Agreement with AFL. Also in December of 1997, the company issued a Severance Policy. In June of 1999, BJ Services Co. acquired all of the stock of AFL's general and limited partners and assumed control of AFL. This triggered the application of AFL's Severance Policy. BJ Services offered Richardson a position with the new company, which Richardson declined. According to summary judgment evidence, Richardson told the President of BJ Services on several occasions that he did not need to work, and that he intended to comply with his non-competition agreement.

After his last day of employment, Richardson signed a Release Agreement and was paid approximately $180,000.00 by AFL/BJ Services. Richardson was given forty-five days to think about it before he signed the Release. He was also given seven days to revoke it after signing it. Richardson admitted that he had an attorney review the Release before he executed it. Approximately two months after he was paid pursuant to the Release, Richardson filed a declaratory judgment action to determine the validity of the non-competition provisions because he wished to return to work.

### THE DOCUMENTS

In the Employment Agreement, AFL promised Richardson, as its President, employment until retirement, a $100,000.00 annual salary, and twelve months of severance pay and benefits upon separation. However, the Employment Agreement also provided for termination of Richardson in the event of disability, for cause, or without cause with twelve months prior written notice. The Employment Agreement also included a non-competition agreement, wherein Richardson promised not to compete for twelve months after separation of employment, and not to solicit AFL employees to enter into employment with any company in competition with AFL.

Pursuant to the Severance Policy, upon a change in the ownership of the company, severance pay would be paid based on continuous employment with AFL. But if the employee had a better severance package in his employment agreement, he could choose the agreement more beneficial to him. The employee would be bound by any and all confidentiality, invention, and non-competition covenants or obligations that were in place at the time of the change of ownership.

In the Release Agreement, Richardson accepted an additional seven months of no competition in return for an additional seven months of severance pay. Paragraph 8 of the Release states the following:

> Further, Employee agrees to and accepts that the time period applicable to the non-competition provision has been extended from 12 months as originally provided in his Employment Agreement to 19 months, commencing from the effective date of Employee's termination of employment, in return for Employee receiving 7 months additional severance pay for his years of service at Acid Engineering,[1] with said additional severance pay already calculated into and showing in the lump sum amount specified in Paragraph 3 of this Agreement.

Even though Richardson did not plead ambiguity, the trial court allowed parol evidence to help interpret the various agreements, which were somewhat ambiguous. One such ambiguity was present in the Release Agreement, which stated that Richardson was paid pursuant to the Severance Policy. However, according to the Severance Policy, he would have been paid considerably less than the $180,000.00.

### SUMMARY JUDGMENT STANDARD OF REVIEW

By way of six issues, AFL complains that the trial court erred when it granted

---

1. Richardson, along with several other employees, went to work for AFL after many years of service with Acid Engineering. There was discussion at a board meeting that to expand the severance package to include an employee's time with Acid Engineering would be a real selling point for the Severance Policy. At the summary judgment hearing, Richardson contended that the Severance Policy was always intended to reflect an AFL's employee's years of service with Acid Engineering; but AFL asserted that it only agreed to pay Richardson for his time with Acid Engineering as a settlement of a disputed claim, and to extend the non-competition agreement.

Richardson's Motion for Summary Judgment. In reviewing a 166a(c) summary judgment, this Court must apply the standards established in *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex. 1985), which are: ·

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Id.* at 548–49. For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of a material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). A summary judgment is improperly granted if the non-movant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Moore v. K Mart Corp.,* 981

S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. denied). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/ Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits and other summary judgment proof. The only question is whether or not an issue of material fact is presented. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).

In granting a summary judgment, the trial court is confined to the specific grounds set forth in the motion. *See Clear Creek Basin Auth.,* 589 S.W.2d at 677. If the trial court's judgment does not specify the ground relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993). Stated another way, so long as one of the summary judgment grounds in the motion is upheld on appeal, the trial court's judgment must be affirmed. *See Tenneco, Inc. v. Enterprise Prods. Co.,* 925 S.W.2d 640 (Tex.1996).

When both sides move for summary judgment, and the trial court grants one motion and denies the other, as in the instant case, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented. *The Commissioners Court of Titus County, et al. v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). The appellate court may reverse the trial court judgment

and render such judgment as the trial court should have rendered, including rendering judgment for the other movant. *Id.; Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988).

## RICHARDSON'S GROUNDS FOR SUMMARY JUDGMENT

1. The non-competition agreement in the Release and the Employment Agreement are unenforceable because neither was "ancillary to an otherwise enforceable agreement" at the time it was made.

2. The non-competition agreement is unenforceable because its scope is unreasonable.

3. Non-compete unenforceable because AFL is out of business, and therefore does not have "an interest worthy of protection."

4. The non-competition agreement is unenforceable because AFL failed to make any promise to Richardson that would give rise to any legal interest in restraining Richardson from competing (in other words, no valid consideration).

5. The non-competition agreement is unenforceable because the payment of monies cannot form the valid basis of a non-competition provision for a post-employment restrictive covenant.

6. AFL's counterclaims are without merit because the money paid to Richardson was made to him pursuant to the "Change of Control Employee Severance Policy," not pursuant to the Release.

7. Reformation is appropriate, if the non-compete is found to be valid.

## ISSUES ON APPEAL

AFL contends on appeal that (1) the trial court improperly declared the non-compete provisions unenforceable as a matter of law, are supported by ample consideration, contain reciprocal promises, are necessary to protect AFL's interests, and are reasonable in scope; (2) the trial court erred in declaring the non-compete provisions unenforceable because Richardson waived or released or is estopped from bringing this claim; (3) the trial court's dismissal of AFL's counterclaims was improper because Richardson was paid pursuant to the Release Agreement and because genuine issues of material fact exist; (4) the trial court erred in denying AFL's Motion for Continuance because AFL was not allowed adequate time to conduct discovery and respond to Richardson's Motion for Partial Summary Judgment; (5) the trial court erred in denying AFL's Motion to Strike Richard's Summary Judgment evidence because the affidavits contain conclusory statements by witnesses who were without personal knowledge of the facts; and (6) the trial court's award of Richardson's attorney's fees and costs was improper and not supported by equity.

## NON-COMPETITION AGREEMENTS

The legislature enacted the Covenants Not to Compete Act in 1989, which largely supplanted the common-law development of this area of law up to that time. TEX.BUS. & COMM.CODE.ANN. § 15.50, et seq. (Vernon Supp.1996). A covenant not to compete is a restraint of trade and will not be enforced unless it is reasonable. *Travel Masters, Inc. v. Star Tours, Inc.,* 827 S.W.2d 830, 832 (Tex.1991). A covenant not to compete is enforceable if (1) it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made, and (2) it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the

good will or other business interest of the promisee. TEX.BUS. & COMM.CODE.ANN. § 15.50 (Vernon Supp.1996). In order to be ancillary to an otherwise enforceable agreement,

    (1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and

    (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.

*Light v. Centel Cellular Co.,* 883 S.W.2d 642, 647 (Tex.1994).[2] In the context of a non-competition agreement, an employer must make a non-illusory promise in return for which the promise to not compete was made. A non-illusory promise is one which actually binds the employer. *Id.* at 644–45. The enforceability of a covenant not to compete is a question of law for the court. *Id.* at 644.

AFL argues that we should not apply *Light's* two-prong test in this case since Richardson was not an at-will employee. We need not reach the question of Richardson's employment status, however, because *Light* clearly applies to both at-will and term employment.[3]

### THE EMPLOYMENT AGREEMENT

In the Employment Agreement between Richardson and AFL, there are three promises that are not illusory and thus capable of serving as consideration for an agreement. Those three promises are: (1) AFL's promise to provide twelve (12) months prior written notice of termination if Richardson is terminated without cause; (2) Richardson's promise to return to AFL, upon termination of employment, any and all notes, records, documents, devices, data, drawings, materials, equipment, reproductions, excerpts, or extracts, and all copies thereof, that pertain to the confidential information or developments or to the business and operations of AFL generally; and (3) Richardson's promise not to disclose or use any confidential information obtained from AFL for anything but the benefit of AFL. Since these three promises are non-illusory, the Employment Agreement is an otherwise enforceable agreement.

■ The next question is whether the non-competition agreement is ancillary to this otherwise enforceable agreement. We must apply *Light's* two-prong test to make this determination. The first prong is whether the consideration given by the employer in the otherwise enforceable agreement gives rise to the employer's interest in restraining the employee from competing.[4] We hold that in this case, it does not. AFL's promise to give notice of termination does not give rise to AFL's interest in restraining Richardson from competing. *See Donahue v. Bowles, Troy, Donahue, Johnson, Inc.,* 949 S.W.2d 746, 752 (Tex.App.—Dallas 1997, writ denied). The second prong, on the other hand, is satisfied by one of Richardson's promises, but is not satisfied by the other.

---

**2.** To the extent that this opinion is inconsistent with the opinion of this Court in *Stone, et al. v. Griffin Communications and Security Systems,* 53 S.W.3d 687, 693 n. 5 (Tex.App.—Tyler 2001, no writ), we hereby overrule *Stone,* 53 S.W.3d 687.

**3.** *See Light,* 883 S.W.2d 642, 646 n. 10.

**4.** AFL cites *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 681 n. 6 (Tex.1990), for the proposition that consideration for a non-compete provision can take many forms. However, this common law approach has been superseded by statute. *See Light,* 883 S.W.2d at 643–44.

The covenant not to compete *is* designed to enforce Richardson's promise not to disclose or use AFL's confidential information. However, AFL did not agree to provide confidential information in exchange for Richardson's promise not to disclose it. As discussed above, the consideration provided by AFL, i.e., its promise to give notice of termination, does not give rise to its interest in restraining Richardson from disclosing confidential information. Concerning Richardson's agreement to *return* confidential information to AFL upon termination, we note that a non-competition agreement is not designed to enforce such a promise. *See Light,* 883 S.W.2d at 648 n. 15. Because both prongs of the two-prong test are not satisfied, the non-competition agreement is not ancillary to the Employment Agreement, and is therefore a naked restraint on trade. Consequently, it is unenforceable.

## THE WAIVER AND GENERAL RELEASE AGREEMENT

Richardson and AFL exchanged several promises in the Release Agreement which could potentially serve as consideration for an agreement. Six of those promises are: (1) Richardson releases and discharges any and all claims to entitlements, compensation or benefits under the Employment Agreement; (2) AFL agrees to pay Richardson $182,083.00; ·(3) Richardson agrees not to file a lawsuit to assert any claims against AFL; (4) Richardson agrees not to seek reinstatement or future employment with AFL; (5) Richardson agrees to keep this release agreement confidential; and (6) Richardson agrees not to disclose any confidential information obtained while employed by AFL. These are all non-illu-sory promises and, therefore, the release constitutes an otherwise enforceable agreement.

We must next determine if the non-competition agreement is ancillary to this otherwise enforceable agreement. For the non-competition agreement to be ancillary to the Release Agreement, the following must be true: (1) the consideration given by AFL (the $182,083.00) in the release agreement (exchange of currency for promise not to disclose) must give rise to AFL's interest in restraining Richardson from competing (AFL has interest in restraining Richardson with knowledge of AFL's confidential information from competing), and (2) the covenant must be designed to enforce Richardson's consideration or return promise (the promise not to disclose confidential information) in the otherwise enforceable agreement (the Release Agreement). Because the $182,083.00 given by AFL does not give rise to AFL's interest in restraining Richardson from competing, we hold that the covenant not to compete is not ancillary to the Release Agreement. The non-competition agreement is therefore unenforceable as a naked restraint on trade.[5]

## EMPLOYEE SEVERANCE POLICY

In the Severance Policy agreed to by Richardson and AFL, there are two promises which could potentially serve as consideration for an enforceable agreement. Those two promises are: (1) AFL agrees to pay severance benefits to Richardson in the event a "change of control" of the company occurs; mid (2) Richardson agrees "to be bound by any and all confi-

---

5. We note that even if AFL had stated in the Release Agreement that it had provided Richardson with confidential information, this would not have been adequate consideration for the non-competition agreement, since past consideration will not support a subsequent promise not to disclose. *See CRC–Evans Pipeline Int'l, Inc. v. Myers,* 927 S.W.2d 259, 265 (Tex.App.—Houston [1st Dist.] 1996, no writ).

dentiality, invention, and non-competition covenants or obligations that are in place at the time of the Change of Control." Since AFL and Richardson both make non-illusory promises, the Severance Policy is an otherwise enforceable agreement.

■ However, in applying *Light's* two-prong test, it is clear that AFL's agreement to pay Richardson severance pay does not give rise to AFL's interest in restraining Richardson from competing. Also, the covenant not to compete is not designed to enforce Richardson's return promise to be bound by any and all confidentiality, invention, and non-competition covenants or obligations that are in place at the time of the Change of Control. In other words, the promise to be bound by a non-competition agreement cannot serve as consideration for the non-competition agreement itself. Thus, the non-competition agreement in the Severance Policy fails for lack of consideration. We overrule AFL's first issue.

### WAIVER, RELEASE OR ESTOPPEL

■ In its second issue, AFL contends that the trial court erred in declaring the non-compete provisions unenforceable because Richardson waived or released or is estopped from bringing this claim. Waiver is an intentional relinquishment of a known right either made expressly, indicated by conduct that is inconsistent with an intent to claim the right, or shown by the circumstances surrounding the making of the contract. *United States Fidelity & G. Co. v. Bimco Iron & M. Corp.*, 464 S.W.2d 353, 357 (Tex.1971). In regards to waiver, the Release Agreement states the following:

. . .

In consideration for this lump sum payment [$182,083.00] . . . Employee voluntarily and knowingly waives, releases and discharges American Fracmaster,

Ltd., BJ Services Company and their parents, successors, subsidiaries, affiliates, employees, officers, directors, owners, partners, shareholders, agents and assigns from all claims, liabilities, demands and causes of action, known or unknown, fixed or contingent, which Employee may have or claim to have against any of them as a result of his employment and/or termination from employment. Employee agrees not to file a lawsuit to assert any such claims. This waiver, release and discharge includes, but is not limited to: (1) claims arising under federal, state or local laws prohibiting employment discrimination such as, without limitation, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (for claims arising through the date of Employee's signature on this Agreement), the Americans with Disabilities Act, Section 451 of the Texas Labor Code, and the Texas Commission on Human Rights Act; (2) claims for breach of contract including, without limitation, claims arising under the Employment Agreement, the Separation Policy, and/or any other agreements or contracts which Employee may have with any of the entities or persons listed in this Paragraph, except for any claim for breach of this Agreement, (3) claims for personal injury, harm or other damages (whether intentional or unintentional), (4) claims growing out of any legal restrictions on right of American Fracmaster Ltd. or BJ Services Company to terminate employees, (5) claims for wages or any other compensation, or (6) claims for benefits or entitlements including, without limitation, those arising under the Employee Retirement Income Security Act.

. . .

As we stated earlier, the Release Agreement is an enforceable contract. Among

other things, Richardson specifically agreed not to bring suit against AFL *for any reason,* other than for the breach of the Release Agreement itself. There is no exception for the filing of a Declaratory Judgment action to declare the non-competition agreements to be unenforceable. Furthermore, elsewhere in the Release Agreement, Richardson agreed that the covenant not to compete was reasonable and valid and that he irrevocably waived all defenses to the strict enforcement of that covenant. We hold, therefore, that Richardson knowingly and voluntarily waived his right to bring this action and to challenge the validity of the non-competition agreement.[6] Thus, we sustain issue two.

### AFL'S COUNTERCLAIMS

In its third issue, AFL contends that the trial court erroneously granted summary judgment for Richardson on all of AFL's counterclaims. In its original answer, AFL asserted counterclaims for fraud, negligent misrepresentation, promissory estoppel, anticipatory repudiation, rescission, restitution and unjust enrichment to obtain damages for Richardson's alleged fraudulent behavior in inducing the Release Agreement, to enforce the Release Agreement, or in the alternative, to recover the $182,083.00 AFL paid to Richardson under the Release Agreement.

In its Order Granting Partial Summary Judgment, the trial court stated the following:

IT IS FURTHER ORDERED that summary judgment is granted for Plaintiff regarding all of Defendant's counterclaims and that the lump sum severance payment made to Plaintiff was made pursuant to the Change of Control Employee Severance Policy in force at the

time of payment and therefore Plaintiff is granted summary judgment as to all of Defendant's counterclaims.

According to the above order, the trial court dismissed AFL's counterclaims on the basis of its conclusion that Richardson was paid the $182,083.00 under the Severance Agreement. However, in calculating the amount of severance pay due Richardson under the Severance Agreement, Richardson was only entitled to five to seven months severance pay (depending upon his age), a substantial amount less than the $182,083.00 which he was actually paid. This raises a fact issue as to whether or not Richardson was paid under the Severance Agreement, or whether he was paid pursuant to the Release Agreement.

Further, AFL raised fact issues as to all of its counterclaims. Attached to its Response to Richardson's Motion for Summary Judgment, is an affidavit signed by Kenneth A. Williams. In his affidavit, Williams states that he is the President of Fracmaster U.S.A and Vice President of BJ Services Co. After BJ Services bought AFL, Williams spent many hours with Richardson in order to become acquainted with all aspects of AFL. During this time, Richardson told Williams on several occasions that he was financially secure, that he did not need to work, that he intended to retire from the oil field business and that he did not intend to compete with AFL or BJ Services.

Also attached to AFL's Response is an affidavit by Stephen Wright, who is currently the Director of Human Resources for BJ Services. He testifies that AFL and BJ Services would not have paid the full $182,083.00 to Richardson if he had not signed the Release Agreement, which included an eighteen month non-competition

---

**6.** We note that Richardson was given forty-five days to discuss the Release Agreement with an attorney, and was also given seven days after he signed it to revoke it.

covenant. Wright also states that the payment of additional monies above and beyond the original severance payment was a settlement of a disputed claim.

Additionally, in support of its contention that Richardson fraudulently induced AFL to enter into the Release Agreement, AFL attached a letter from Richardson to Williams wherein Richardson writes, "There seems to be some concern on behalf of BJ about the non-competition provision in my contract. I assure you I am aware of this provision and intend to strictly comply with my contract...."

The Release Agreement reflects that Richardson signed the document on 8/4/99. On 9/28/99, Richardson wrote to BJ Services stating that he had a job offer from a major service company, which he was seriously considering accepting. He admitted that this company was a competitor of BJ Services, and that he wondered what BJ Services' response would be if he took the job.

We hold that the above-recited evidence is sufficient to raise fact issues as to whether or not Richardson knew the non-competition agreements were unenforceable, whether he ever intended to comply with the non-competes, and whether he knowingly or negligently made misrepresentations to induce AFL to pay him more in severance pay that he was actually entitled to, when he knew he was not going to abide by the Release Agreement. We hold, therefore, that AFL brought forth more than a scintilla of probative evidence to raise genuine issues of material fact as to its counterclaims for fraud, negligent misrepresentation, promissory estoppel, anticipatory repudiation, rescission, restitution and unjust enrichment. Accordingly, we sustain issue three.

### ATTORNEY'S FEES

■ The trial court's award of attorney's fees and costs to Richardson under the Declaratory Judgment Act is based upon that court's declaration that the non-competition agreements are unenforceable. However, because we have held that Richardson waived his right to bring the Declaratory Judgment action, the award of attorney's fees and costs to Richardson is improper. Consequently, we sustain issue six.

### CONCLUSION

Because we have sustained issues two, three and six, it is unnecessary for us to address the additional issues raised by AFL. Accordingly, we reverse the declaratory judgment in favor of Richardson and for attorney's fees and costs because, as a matter of law, he waived his right to challenge the validity of the non-competition agreement. Furthermore, we render judgment for AFL based upon the affirmative defense of waiver, and reverse and remand AFL's counterclaims for further proceedings on the merits.