NO. 07-04-0323-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 18, 2004



______________________________




KAREN G. WETTERMAN, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2004-404800; HONORABLE CECIL G. PURYEAR, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

MEMORANDUM OPINION


 Appellant Karen G. Wetterman filed a Motion to Dismiss Appeal on October 13,
2004, averring that she no longer wishes to prosecute her appeal. The Motion to Dismiss
is signed by appellant and her attorney. 

 Without passing on the merits of the case, appellant's motion for voluntary dismissal
is granted and the appeal is hereby dismissed. Tex. R. App. P. 42.2. Having dismissed
the appeal at appellant's personal request, no motion for rehearing will be entertained and
our mandate will issue forthwith. 



 Phil Johnson

 Chief Justice


























Do not publish.



s under the agreement. In May 2001, TBA ceased making royalty
payments under the agreement. The reason, they asserted, was that Scott Maples
discovered a Canadian corporation was the owner of the registered trademark Muscletech.

 Muscletech filed the underlying suit on August 31, 2001, and successfully sought
a temporary injunction. The trial court issued the injunction ex parte against the Maples
on the same day conditioned on Muscletech posting a $5,000 bond. Muscletech amended
its petition to add Larry Maples and TBA as defendants and make them subject to the
injunction. An amended injunction was signed on November 7, 2001, and the $5,000 bond
was posted by Muscletech. 

 Appellants filed a motion to increase the bond on November 9, 2001. In their
motion, they asserted that the $5,000 bond had no relation to the potential damages that
might be suffered by them. They argued that enforcement of the injunction would require
the store operated by appellants to close until the conclusion of the trial and posited that
the only evidence before the court as to the amount of potential damages was that the
store had a gross income of $25,000 to $30,000 per month. Because the trial on the
merits was set for February 24, 2002, appellants concluded that enforcement of the
injunction would result in a loss of at least $100,000 in revenue and the bond should be in
at least that amount. The motion was denied on November 28, 2001, and this interlocutory
appeal was perfected the next day. On December 7, we granted a temporary stay of
enforcement of the injunction pending a hearing on the motion. We now consider whether
to extend the temporary stay pending resolution of the interlocutory appeal.

 Muscletech initially argued that TBA had forfeited its right to seek relief from this
court because of a failure to pay franchise taxes. In support of that position, it cited
sections 171.251-.252 of the Tax Code and provided a computer printout of records of the
Comptroller of Public Accounts that indicated the taxes had not been paid. In response,
appellants point out that forfeiture is not automatic and the record does not show a
forfeiture of TBA's corporate privileges. Appellants also question the propriety of our
relying on a mere printout obtained from an internet site operated by the Comptroller.
However, we need not further address that issue because we agree that the record does
not show that TBA's corporate privileges were actually forfeited and only shows that as of
December 5, 2001, it was "not in good standing" because it had not met all state tax
requirements.

 Citing Rule of Appellate Procedure 29.2, Muscletech next argues that appellants
may not seek a stay from this court because the record does not show that it first
attempted to obtain a stay from the trial court. Rule 29.2 authorizes a trial court to permit
an order granting interlocutory relief to be superseded pending appeal of that order. It also
provides for an appellate review as to whether a trial court abused its discretion in refusing
to allow an order to be superseded. Tex. R. App. P. 29.2. However, we do not agree that
the rule mandates a trial court refusal to supersede before we may make orders necessary
to preserve the parties' rights pursuant to Rule 29.3. Rule 29.3 specifically addresses the
limitation on our power to issue temporary orders and provides that we may not do so "if
the appellant's rights would be adequately protected by supersedeas."

 As we have noted, here, appellants contend that the trial court erred in setting a
bond that was insufficient in amount to protect their respective interests. The
determination of the adequacy of the bond set by the trial court in instances such as this
one is to be made on a case-by-case basis based upon the record before the reviewing
court. Stone v. Griffin Communications and Security Systems, Inc., 53 S.W.3d 687, 696
(Tex.App.--Tyler 2001, no pet. h.). In conducting such a review, we must bear in mind that
the amount of bond required on the issuance of a temporary injunction rests within the
sound discretion of the trial court and will not be disturbed on appeal in the absence of an
abuse of discretion.

 The parties have not presented any authority addressing the showing necessary to
support a motion for a temporary stay such as this. The only case we have found directly
addressing an analogous issue is Lamar Builders, Inc. v. Guardian Sav. & Loan Ass'n, 786
S.W.2d 789, 791 (Tex.App.--Houston [1st Dist.] 1990, no writ). In that case, the court had
occasion to consider former Rule of Appellate Procedure 43(c), the progenitor of current
Rule 29.3. The court noted there were no clear procedural prerequisites under Rule 43. 
However, noting the similarity of an action for temporary stay to an injunction to protect
appellate jurisdiction under section 22.221 of the Texas Government Code (Vernon Supp.
2001) and former Rule of Appellate Procedure 121, the court opined, "logic dictates that
to obtain temporary orders under Rule 43, a movant must make a clear showing that it is
entitled to relief." Lamar Builders, 786 S.W.2d at 791. That showing might be made, the
court said, by stating the relief sought, the basis for the relief, and setting forth the facts
necessary to establish a right to the relief sought. Id.

 In support of their contention that the amount of the bond was clearly inadequate,
appellants rely on the testimony of Scott Maples that the Kansas store had gross monthly
sales of about $25,000, and they argue that this figure should be used to calculate the
damages they might suffer as a result of the temporary injunction. At oral argument,
Muscletech challenged the adequacy of this evidence, positing that it was not sufficient
because it did not take into consideration expenses, such as employee salaries, and other
necessary expenses incident to the operation of such a store, that would not be incurred
if it was not operated pending trial. Appellants responded to this argument by reasoning
that it was Muscletech's burden to produce any such offsetting expenses. We disagree.

 As the Lamar Builders' court pointed out, it is the movant's burden in a proceeding
such as this to make a clear showing that it is entitled to relief. In this instance, to show
an abuse of discretion, it would be necessary to make a showing of likely actual losses if
the store was required to cease operation pending trial. If we determined a showing of
expected gross revenues was sufficient, we would be required either to ignore common
knowledge and assume the store would have no expenses that would not be incurred
during the closure, or place the burden on the non-movant to show the actual potential
losses. In a context such as that present here, namely, to stay a temporary injunction
issued after a hearing, policy considerations weigh strongly in favor of placing that burden
upon the movant. The abbreviated timeline within which such matters are heard and
decided does not allow opposing parties to conduct the discovery necessary to make the
kind of showing advocated by appellants here. As the movants, appellants were the only
parties with access to the information required to establish, with some degree of accuracy,
the actual losses that might result from enforcement of the injunction.

 In sum, without a clear showing of the potential losses that might result from the
challenged injunction, we have no adequate basis on which to conclude that the trial court
abused its discretion in setting the bond at $5,000. See Stone, 53 S.W.3d at 696. For that
reason, we overrule appellants' motion for the immediate issuance of an order staying the
injunction. 

 Per Curiam 

Publish.
1. As an important part of the agreements contained herein, for the protection of the
Muscletech name, logo, business reputation and commercial enterprises, Licensee agrees
that for a period of 3 years from the date of the termination of this agreement that it will not
directly or indirectly . . . solicit or accept orders for the sale, distribution, marketing or
engage in any other activities similar in any way to that conducted by it under this
agreement with regard to the goods or items in any way resembling products within the
licensee's geographical area as herein described.